BLACKWELL, Plaintiff in error, v. STATE, Defendant in error. [Two cases.]

*Nos. State 126, 127. Argued April 3, 1969.—Decided May 9, 1969.*
(Also reported in 167 N. W. 2d 587.)

[11] *Id.* at page 491.

616

For the plaintiff in error there were briefs and oral argument by *James H. McDermott,* state public defender.

For the defendant in error the cause was argued by *William D. Gardner,* deputy district attorney of Milwaukee county, and *Harold B. Jackson, Jr.,* assistant district attorney, with whom on the brief were *Robert W. Warren,* attorney general, *William A. Platz,* assistant attorney general, and *E. Michael McCann,* district attorney.

CONNOR T. HANSEN, J.   The evidence against the defendant is substantial and there is ample credible evidence to prove the defendant's guilt beyond a reasonable doubt.   This appeal is based primarily on alleged errors during the course of the trial which the defendant asserts are of such a prejudicial nature as to require reversal. We do not agree.

The series of incidents that led to the defendant's ultimate conviction occurred during a period of approximately five and one-half hours, commencing at 8:50 or 8:55 p. m. on June 5, 1964, and culminating with his arrest at 2:30 a. m. on June 6, 1964.

Procopio Sandoval, an acting detective in the vice squad of the Milwaukee Police Department, and the principal witness, drove his own car into the area of West Winnebago street on a narcotics investigation on the evening of June 5, 1964.   At approximately 8:45 p. m. he parked in front of 840 West Winnebago and honked his horn several times, whereupon a woman appeared at an upstairs window at that address.   He told her he was looking for one "Wolf;" she answered, and as a result of her answer Detective Sandoval drove to Eighth and West McKinley streets.

He went there looking for Wolf to purchase some narcotics from him.   On arriving there Detective Sandoval blew his horn several times, and then, at approximately 8:50 or 8:55 p. m., he observed the defendant walking

toward his car through an alley coming out on Eighth street. There followed, according to Detective Sandoval's testimony, a transaction between him and defendant wherein he bought from defendant, for $20, two small tinfoil packets, referred to by defendant as "A couple of dime bags" of "stuff." It was stipulated between the prosecutor and defense counsel that the contents of the packets was heroin. During all this time Detective Sandoval was alone in his car.

The State also called detective Thomas Thelen, Milwaukee Police Department, who testified that he, seated with officer Paul Hibbard in an unmarked police car, kept Detective Sandoval under surveillance during his stop at 840 West Winnebago and during the incident occurring at Eighth and McKinley. His testimony was that, using "a binocular," he saw the defendant approach Detective Sandoval's car and stand along side of it, and was able to observe the defendant's face. Thelen testified that he observed a conversation between Detective Sandoval and the defendant, saw the defendant leave for two or three minutes, return, bend over at the driver's window of Detective Sandoval's car, and then leave for good.

Detective Sandoval then drove to the Safety Building parking lot where he was met by Detective Thelen and Officer Hibbard. At 9:15 p. m. the two aluminum packets were taken to the vice squad room, placed in an envelope, and marked for identification.

Detective Thelen made a courtroom identification of defendant as the man who approached Detective Sandoval's car during the above-mentioned incident.

Detective Sandoval saw the defendant again on June 6, 1964, in front of 840 West Winnebago street at approximately 2:10 a. m. Detective Sandoval testified that the defendant was with another man; that the defendant was dressed in the same manner he had been when Detective Sandoval first saw him, and that he looked the same. The defendant was arrested about 2:30 a. m. on Sixth and McKinley.

The defendant, on appeal, raises ten issues, several of them interrelated, and each of them has been given consideration.

*Testimony of alleged subsequent offense.*

The principal thrust of the defendant's defense was that he was not involved in the transaction with Detective Sandoval on the evening of June 5, 1964, and that he was the victim of mistaken identity. Thus the defendant made identification the central issue in the case.

Several of the alleged errors relate to incidents that occurred during the trial.

On re-cross examination the defense counsel inquired of Detective Thelen as to who was in the vice squad room when the package was brought there by Detective Sandoval (meaning 9:15 a. m., June 5, 1964). Detective Thelen responded, "Officer Sandoval, the defendant, Paul Hibbard, and myself." The answer of Detective Thelen was patently incorrect. As a result of this situation on re-direct examination the prosecutor asked Detective Thelen several questions, one of which was, "The defendant was not there at that time?" The detective answered, "I was thinking of the second packet on a later date." Objection to the unresponsive answer was made and sustained, and the jury was instructed to disregard the answer. The defense counsel then moved for a mistrial, which motion was denied and the trial court again instructed the jury to disregard this testimony.

Later in the trial, on cross-examination of the defendant, the prosecutor asked "Isn't it a fact that you gave him [Detective Sandoval] two small tinfoil packets when you were in front of 840 West Winnebago Avenue on the early morning hours of June 6, 1964?" The defendant never answered the question and the defense objected to it as being immaterial and improper. The objection was

sustained and the defense counsel again moved for a mistrial. The trial court denied the motion, restated its determination that the question was immaterial, and ordered the jury to disregard the interrogation.

The question before this court then becomes whether these alleged errors were harmless or made harmless by the trial judge when he sustained the objections and instructed the jury to disregard the testimony.

A recent statement by this court on the effect of errors is found in *Dascenzo v. State* (1965), 26 Wis. 2d 225, 236, 132 N. W. 2d 231:

"Errors, if any, committed during the course of the trial should not serve to overturn a judgment ' "unless it appears pretty clearly that had they not occurred, the result might probably have been more favorable to the party complaining." ' "

Considering the evidence as a whole, we are satisfied beyond a reasonable doubt that the errors complained of are not of constitutional proportions and did not contribute to the defendant's conviction.

On re-direct examination of Detective Sandoval, the prosecutor asked him what conversation he had with the defendant at 2:10 a. m. on June 6, 1964, in front of 840 Winnebago avenue.

The defense objected, claiming such conversation to be incompetent and immaterial, and too remote and subsequent to the purchase which produced the defendant's arrest. The court permitted Detective Sandoval to answer.

Detective Sandoval testified, "He walked up to the car and he looked in the window of the passenger side, and he asked me if I wanted to do it again—if I wanted some more."

The defendant had maintained the position throughout the trial that his arrest for this offense was the result of mistaken identity.

We, therefore, conclude that the testimony of Detective Sandoval was properly admitted because it was highly probative and relevant in establishing the identity of the defendant as the person who sold the heroin to him a few hours before.

We see nothing improper in the conduct of the prosecutor in asking Detective Sandoval questions about conversation with the defendant on Winnebago avenue at 2:10 a. m., June 6, 1964. Such testimony supported Detective Sandoval's identification of the defendant as the person from whom he previously purchased heroin.

*Ledger entries.*

Testimony was admitted into evidence from some ledger entries maintained in the records of the vice squad of the Milwaukee Police Department.

Immediately preceding the introduction of the ledger entries, the trial court asked the witness, Detective Thelen, "to read only that part of those entries which pertain to [the defendant's] facial appearances, as there is conflicting testimony in the record at this time regarding that." Detective Thelen read entries which also pertained to other aspects of the defendant's physical appearance.

At the trial no objection was made to the introduction of this testimony. On appeal it is contended the trial court erred in permitting Detective Thelen to read entries that pertained to other aspects of the defendant's physical appearance when the trial court's direction was to read entries that pertained to "facial appearances." We see no prejudicial error in the admission of this testimony, particularly since earlier in the trial the physical appearance of the defendant was brought into dispute.

The defendant also contends that the ledger entries were inadmissible because a proper foundation had not been laid.

Sec. 889.25, Stats.,[1] relates to the admission of business records as evidence in civil proceedings and is made applicable to criminal proceedings by sec. 957.14.

The trial court overruled the defendant's objection to the admission of the ledger entries. Our examination of the records leads us to conclude that a proper foundation had been laid. The requirements of sec. 889.25, Stats., were satisfied and the objection was properly overruled.

## Failure to instruct.

The defendant filed a notice of alibi stating that at the time of the alleged offense he "was a passenger on a Greyhound Bus, travelling from Chicago, Ill., to Milwaukee, Wisconsin and boarded said Bus at Chicago, Ill., at 6:30 P. M. June 5/64 and arrived in Milwaukee, Wisconsin about and between 8:30 and 8:45 P. M. of June 5, 1964."

Detective Sandoval was parked in his car and first observed the defendant walking toward his car through an alley coming out on Eighth street. The sale of heroin to Detective Sandoval occurred at approximately 8:50 or 8:55 p. m. on June 5, 1964.

The defendant gave no alibi testimony and did not call the witness named in the notice of alibi. The only refer-

---

[1] **Business records as evidence.** Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of such act, transaction, occurrence or event, if the custodian or other qualified witness testifies to its identity and mode of preparation, and if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility. The term 'business' as used in this section, includes business, profession, occupation and calling of every kind."

ence in the record to the alleged bus trip occurred on cross-examination of the defendant. The prosecutor asked the defendant when he came up from Chicago prior to June 5th. The defendant responded that he left Chicago "on the 6:30 bus coming here [Milwaukee] on June 5." The answer was not responsive to the question and can hardly be called an alibi.

No request was made for an alibi instruction and none was given. We think the trial court was correct in not giving an alibi instruction, particularly in the absence of a request. Under the facts of this case, if the trial court had given such an instruction, the defendant's credibility might have been seriously questioned by the jury.

The defendant also argues that since there was testimony that might well have raised reasonable doubt as to the identification of the defendant as the person who sold heroin to Detective Sandoval, the trial court erred in failing to instruct the jury sua sponte that if there was a reasonable doubt as to the defendant's identification the jury should acquit. No such instruction was requested and none was given.

This court has twice spoken on errors alleged due to the failure of the court to give an instruction sua sponte. In *Johns v. State* (1961), 14 Wis. 2d 119, 128, 109 N. W. 2d 490, this court concluded that the trial court did not err, "in the absence of a request by the accused, in not instructing the jury the omission of the accused to testify on his own behalf created no presumption against him."

The reasoning of *Johns* was applied in *State v. Cartagena* (1968), 40 Wis. 2d 213, 222, 161 N. W. 2d 392, where this court held that the trial court did not commit error in failing to instruct sua sponte that certain testimony was admissible only for impeachment purposes.

Identification of the defendant as the person who sold the heroin to Detective Sandoval was the controlling question for the jury. Defendant's whole defense was aimed

at raising doubt as to Detectives Sandoval's and Thelen's identification of the defendant. While it is true that there is a stronger possibility of misidentification in narcotics cases where an undercover agent may file as many as 100 arrest warrants upon completion of his tour of duty, *Salley v. United States* (D. C. Cir. 1965), 353 Fed. 2d 897, 898, it is equally true that during the trial of such cases the item foremost in the jury's mind is the identification of the accused. Furthermore, in the instant case, the defendant's arrest was not the result of the culmination of a long investigation. The defendant was arrested within six hours of the time he is accused of selling heroin.

While identification instructions should be encouraged in narcotics—undercover agent cases, in this case the defense counsel specifically stated that he had "no objection" to the jury charge. However, the trial court did instruct:

"If you are satisfied from all of the evidence in this case beyond a reasonable doubt that at the time and place so mentioned in the information and referred to, that the defendant did sell Heroin, then it is your duty to find the defendant guilty in the said manner and form as charged in the information. If you are not so satisfied from all of the evidence in this case beyond a reasonable doubt, then it is your duty to find him not guilty."

Here, the jury was well aware that identification of the defendant was the focal point of the case. Absent any request by the defendant for an identification instruction, the instruction on "reasonable doubt" was sufficient.

*New warrant.*

On January 21, 1966, the trial court dismissed an identical action against the defendant because of a defect in the original complaint. The trial court gave the district

attorney three weeks to procure a new warrant. The court also ordered that the defendant be "remanded to custody at this time" and the same bail was continued. The new warrant was issued three weeks and three days later.

Sec. 955.09, Stats., reads in part:

**"Pleas and motions before trial; waiver of jeopardy.**

"  . . . .

"(6) If the court grants a motion to dismiss based on a defect in the indictment, information or complaint, or in the institution of the proceedings, it may order that the defendant be held in custody or that his bail be continued for a specified time pending issuance of a new summons or warrant or filing of a new indictment, information or complaint."

The defendant contends that sec. 955.09 (6), Stats., grants the court power to set a deadline in which the district attorney had to have a new warrant issued or he was then barred from commencing the action.

Such a position is untenable. Sec. 955.09 (6), Stats., does not purport to be a statute of limitations. It authorizes a period of time during which a defendant may be *held in custody* or have his *bail be continued* pending issuance of a new warrant.

The only consequence to the State in failing to procure a new warrant in the specified time is that the prisoner must be released, and if a new prosecution is thereafter commenced the defendant must be located.

*Sufficiency of the evidence.*

The defendant argues that there was not sufficient credible evidence for a jury to find the defendant guilty beyond a reasonable doubt. This argument is based upon the fact that both detectives testified that the face of the defendant was the same at the time of the arrest and the

time of the trial. The defendant had a mustache at the time of the arrest and none at the time of trial.

Detective Thelen's testimony from the vice squad ledger book established that he observed the mustache at the time of or shortly after the arrest of the defendant.

Detective Sandoval testified that at the time of the transaction for which the defendant was charged, the defendant's face was only twelve inches away from his own. He also testified that he saw the defendant again approximately five hours later when he conversed with the defendant, and the defendant made implicit references to the transaction which occurred earlier the same night.

The credibility of these witnesses and the weight to accord their testimony was properly a function of the jury.

" 'On appeal in a criminal case the test of the sufficiency of the evidence for a conviction is whether the evidence adduced, believed and rationally considered by the jury was sufficient to prove defendant's guilt beyond a reasonable doubt.' " *Strait v. State* (1969), 41 Wis. 2d 552, 559, 164 N. W. 2d 505.

After considering all of the arguments presented by counsel and reviewing the record, we conclude that no prejudicial error was committed in the trial of the defendant and that the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant guilty beyond a reasonable doubt.

*By the Court.*—Judgment and order affirmed.