STATE of Wisconsin, Plaintiff-Respondent,

v.

Ronald WAITES, Defendant-Appellant-Petitioner.

Supreme Court

*No. 89–0520–CR. Argued October 5, 1990.—Decided November 8, 1990.*

(Also reported in 462 N.W.2d 206.)

For the defendant-appellant-petitioner there were briefs by *Robert M. Courtney, Lori L. Schultz* and *Courtney, Pledl & Molter, S.C.,* Milwaukee and oral argument by *Ms. Schultz.*

For the plaintiff-respondent the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

CALLOW, WILLIAM G., J.   This is a review of an unpublished decision of the court of appeals filed October 18, 1989, which affirmed a judgment of conviction entered by the circuit court for Kenosha county, Judge Jerold W. Breitenbach. The defendant-appellant-petitioner, Ronald Waites, appeals his conviction on two counts of delivery of a controlled substance (cocaine), in violation of secs. 161.16(2)(b) and 161.41(1)(c)1, Stats.

The issues are: (1) Did the circuit court abuse its discretion when it failed to give the more detailed version of Wis. J I—Criminal 141 (1987)?;[1] (2) Should out-

---

[1] Wisconsin J I—Criminal 141 (1987) provides (including the bracketed paragraphs):

WHERE IDENTIFICATION OF DEFENDANT IS IN ISSUE
   The identification of the defendant is in issue in this case.

IF THE ACCURACY OF AN EYEWITNESS IDENTIFICATION IS A MAJOR ISSUE IN THE CASE, ADD THE FOLLOWING: [Footnote omitted.]
   [In evaluating the evidence relating to the identification of the defendant as the person who committed the alleged crime, you are to consider those factors which might affect human perception and memory. You are to consider all the circumstances relating to the identification.
   Consider the opportunity the witness who identified the defendant had to observe the defendant, how long the observation lasted, how close the witness was to the alleged offender, the lighting, the mental state of the witness at the time, the physical ability of the witness to see and hear the events, and any other circumstances of the observation.
   With regard to the witness' memory, you should consider the period of time which elapsed between the witness' observation and the identification of the defendant and any intervening events which may have affected the witness' memory.]

CONTINUE WITH THE FOLLOWING IN ALL CASES:
   If you find that the crime alleged was committed, before you may find the defendant guilty, you must be satisfied beyond a reasonable doubt that the defendant is the person who committed the crime.

of-court and in-court identifications of Waites by a police officer be suppressed because the police officer had viewed a photograph of Waites before the crimes?; and (3) Should this case be remanded for further proceedings on the ground that the State used one of its peremptory strikes discriminatorily in striking the lone black individual from a jury panel?

We first conclude that the circuit court did not abuse its discretion by giving the limited version of Wis. J I—Criminal 141.[2] The limited version, in combination with other instructions and evidence presented to the jury during the trial, sufficiently focused the jury's attention on the issue of identification. We next conclude that neither the police officer's in-court nor out-of-court identifications are suppressible, because his viewing of the defendant's photograph was not impermissibly suggestive. Finally, we conclude that the defendant waived his right to appeal his conviction based on an allegedly discriminatory peremptory strike. We will not exercise discretion to consider a *Batson*[3] claim because the State had legitimate reasons to strike the lone black individual from the jury panel, and the defense counsel was justified in not objecting to the strike.

The relevant facts are as follows: John Schrandt, an undercover officer with the Kenosha Police Department, purchased cocaine from Ronald Waites on two separate occasions. Before the first transaction on May 29, 1987, Detective Albert Aiello showed a photograph of Waites to Officer Schrandt, identifying Waites as a potential drug dealer. Officer Schrandt located Waites in an older, yellow Mercedes car with a female passenger at the

[2]The limited version of Wis. J I—Criminal 141 is identical to the more detailed instruction except that the bracketed paragraphs are not included.

[3]*Batson v. Kentucky,* 476 U.S. 79 (1986).

Renault Apartments. After giving Waites $500.00, Schrandt followed Waites into the apartment complex and waited in the hallway while Waites went into Apartment 3. Waites returned with a packet of cocaine which he handed to Schrandt. In his written police report, Officer Schrandt described Waites as a black male, in his thirties, 5' 10" to 11" tall and weighing 170 pounds.

On June 10, 1987, Officer Schrandt returned to the same apartment and again purchased cocaine from Waites.

At Waites' preliminary hearing on December 10, 1987, Officer Schrandt identified Waites in the courtroom and described the two transactions. He also testified on cross-examination that he had refreshed his memory of these events by reading his police reports prior to the preliminary hearing.

At Waites' trial in February 1988, Officer Schrandt testified that he had seen Waites at the Renault Apartments before the first drug transaction and knew him as "Ya-ya." He also testified that prior to the event Detective Aiello had shown him a photograph of a potential investigative target on the night of the first transaction. The assistant district attorney then showed Officer Schrandt the photograph which Schrandt identified as a photograph of Waites. Later in his testimony, Officer Schrandt identified Waites with absolute certainty as the individual who sold cocaine to him. The defense counsel did not object to the testimony concerning the photograph or to the in-court identification of Waites. The defense counsel also did not object to the admission of the photograph into evidence.

Officer Schrandt testified that the first transaction lasted approximately fifteen minutes, the second one less than five minutes. He also testified that, as an undercover officer, he had purchased cocaine from other indi-

viduals at least twenty times prior to his first transaction with Waites.

Three witnesses testified in Waites' defense. Susan Waites, his wife, testified that she first met Waites in July 1987 and married him in November 1987. She further testified that in May and June 1987 she and her son had lived in Apartment 3 of the Renault Apartments. C.J. Franklin, Waites' brother, testified that Waites had worked regularly in his store in May and June 1987. Franklin also testified that he did not keep regular records and did not have an independent recollection of Waites being at his store on May 29 or June 10, 1987. Finally, Waites testified that he worked at his brother's store from 3:00 or 4:00 p.m. until 10:00 p.m. on those dates and did not sell drugs to anyone on either of those dates. He testified that he was 6' 2" tall and weighed 158 pounds. He also testified that he first met Susan Waites in July 1987, and was not at the Renault Apartments in May or June 1987.

On appeal, the court of appeals held that the circuit court had properly exercised its discretion in giving the jury instructions in this case. The court of appeals also held that Waites had waived any objection to Officer Schrandt's in-court identification of Waites. The court rejected his claim that his due process rights were violated by the out-of-court identification of Waites (i.e., when Officer Schrandt located and approached Waites on May 29, 1987 at the Renault Apartments after looking at his photograph), on the ground that he was not entrapped, and there were no precedents that prohibited officers from using a photograph to identify a person who is the target of a criminal investigation. The court of appeals did not address the issue of the peremptory strike because the defendant first raised the issue in this court.

Waites requested the more detailed jury instruction on identification, Wis. J I—Criminal 141, on the ground that the identity of the criminal was a major issue in the case. The first question before the court is whether the circuit court erred in refusing to give the more detailed instruction. We hold that it did not err because: (a) circuit courts are not required, *per se,* to give the more detailed instruction, and (b) the circuit court did not abuse its discretion in refusing to give the more detailed instruction in this case.

Wisconsin J I—Criminal 141 was amended in 1987 by the Criminal Jury Instructions Committee. The bracketed paragraphs were added "in response to numerous inquiries from judges who felt the brief version of J I—141 was not adequate in a case where the reliability of an eyewitness identification was a substantial issue." Wis. J I—Criminal 141 n.1. The Committee compared this instruction to a more extensive instruction recommended by a federal appeals court in *United States v. Telfaire,* 469 F.2d 552, 558-59 (Appendix) (D.C. Cir. 1972). While the *Telfaire* court strongly urged the use of this instruction when identification was a substantial issue, Wisconsin does not have a *per se* rule requiring the use of such an extended instruction when identification is an issue.

We have consistently held that a circuit court has wide discretion as to instructions. *See Hampton v. State,* 92 Wis. 2d 450, 463, 285 N.W.2d 868 (1979); *State v. Williamson,* 84 Wis. 2d 370, 393, 267 N.W.2d 337 (1978); *State v. Lenarchick,* 74 Wis. 2d 425, 455, 247 N.W.2d 80 (1976). We recognize the dangers inherent in identification testimony when the identity of the criminal is an important issue in a case. In such an instance, we recommend the use of the more detailed instruction to avoid

subsequent challenges to the adequacy of such jury instructions. We do not, however, require that the more detailed instruction be given in all situations where the accuracy of the eyewitness identification is an issue. Such a holding would remove some of the circuit court's discretion in giving instructions. Rather, we conclude that the circuit court should determine whether to give the more detailed instruction, basing its decision on factors such as the significance of the identification issue, the nature of other instructions and the danger of misidentification. This determination is not subject to reversal unless the circuit court abuses its discretion.

We conclude that the circuit court did not abuse its discretion in this case. Although the circuit court stated a reluctance to use the more detailed instruction under any circumstances, other evidence in the case supports its use of the limited version of the instruction.

In explaining why he was not using the more detailed instruction, the circuit court judge stated: "[i]t's up to the jurors to determine the criterion for some, not some judges, because there is nothing in the law. That's why I don't give it. If you [defense counsel] have some case law in that regard, I certainly will." He further stated, "these particular factors [those included in the more detailed instruction] are certainly something that may be relevant evidence, but I don't think any particular evidence has to be highlighted to the jury."

We stated, in *Fletcher v. Eagle River Hospital,* 156 Wis. 2d 165, 177, 456 N.W.2d 788 (1990) (citing *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971)), "discretion must be demonstrably exercised by the circuit court or it will be deemed an abuse of discretion." A definitive statement by a circuit court judge that he never uses a particular instruction can be a strong indication that he is not exercising discretion.

384

However, we have also stated that an abuse of discretion will not be found when a reasonable basis for the circuit court's determination exists in the record. *See Boodry v. Byrne,* 22 Wis. 2d 585, 589, 126 N.W.2d 503 (1964). *See also State v. Hutnik,* 39 Wis. 2d 754, 764, 159 N.W.2d 733 (1968) ("[T]here should be evidence in the record that discretion was in fact exercised and the basis of that exercise of discretion should be set forth."). Our review of the evidence which we comment on in this opinion indicates that there was a reasonable basis for using the limited version, and the jury was well aware of the significance of the identification issue.

The circuit court must exercise its discretion in using jury instructions to "fully and fairly inform the jury of the rules of law applicable to the case and to assist the jury in making a reasonable analysis of the evidence." *State v. Dix,* 86 Wis. 2d 474, 486, 273 N.W.2d 250 (1979) (citing *Carlson v. Drews of Hales Corners, Inc.,* 48 Wis. 2d 408, 416, 180 N.W.2d 546 (1970)). In this case, the circuit court ensured that the jury was fully and fairly informed. This is illustrated by the nature of the jury instructions given as well as by other evidence presented to the jury during the course of the trial. In regard to other instructions given, in addition to the limited version of the identification instruction, the circuit court also gave instructions on reasonable doubt, credibility of witnesses, and the defendant's alibi defense.

The circuit court gave an instruction on reasonable doubt.[4] In a case similar to this one, *Blackwell v. State,*

---

[4]Wisconsin J I—Criminal 140 (1988) provides, in part:

The burden of establishing every fact necessary to constitute guilt is upon the State. Before you can return a verdict of guilty, the evidence must satisfy you beyond a reasonable doubt that the defendant is guilty.

42 Wis. 2d 615, 624-25, 167 N.W.2d 587 (1969), Blackwell appealed his conviction of selling heroin on the ground (among other things) that no identification instruction was given, particularly since the defendant's primary defense was aimed at raising doubt as to the investigating detective's identification of him. In *Blackwell*, no identification instruction was requested or given. *Id.* We stated, "identification instructions should be encouraged in narcotics-undercover agent cases." *Id.* However, in *Blackwell*, as in this case, the circuit court gave a "reasonable doubt" jury instruction.[5] That instruction directed the jury to find the defendant guilty only if it was satisfied, beyond a reasonable doubt, that the defendant sold heroin based on all of the evidence in the case. In light of this instruction, we stated, "[h]ere, the jury was well aware that identification of the defendant was the focal point of the case." *Id.* The "reasonable doubt" instruction in this case also focused the jury's attention on the State's burden to establish every necessary fact before Waites could be found guilty.

The circuit court also gave an instruction on credibility. The court believed the issue to be one of credibility rather than identity. While the possibility of misidentification was clearly an issue in this case, the credibility instruction was also proper in that the jury

---

[5]The trial court in *Blackwell* instructed the jury,

> If you are satisfied from all of the evidence in this case beyond a reasonable doubt that at the time and place so mentioned in the information and referred to, that the defendant did sell Heroin, then it is your duty to find the defendant guilty in the said manner and form as charged in the information. If you are not so satisfied from all of the evidence in this case beyond a reasonable doubt, then it is your duty to find him not guilty.

*Blackwell,* 42 Wis. 2d at 625.

may have doubted the veracity of the police officer. While this instruction is not as extensive as the more detailed version of Wis. J I—Criminal 141, it does direct the jury to consider the clearness or lack of clearness of recollections by the witness, and the opportunity the witness had to observe and know the things testified to. Wis. J I—Criminal 300 (1990).[6]

Finally, the circuit court instructed the jury on the defendant's alibi defense. Wis. J I—Criminal 775 (1985).[7] This instruction directed the jury to consider Waites' contention that he was not at the scene of the

---

[6]Wisconsin J I—Criminal 300 (1990), in part, provides:

CREDIBILITY OF WITNESSES
It is the duty of the jury to scrutinize and to weigh the testimony of witnesses and to determine the effect of the evidence as a whole. You are the sole judges of the credibility of the witnesses and of the weight and credit to be given to their testimony.
In determining the weight and credit you should give to the testimony of each witness, you should consider interest or lack of interest in the result of this trial, conduct, appearance and demeanor on the witness stand, bias or prejudice, if any has been shown, the clearness or lack of clearness of recollections, the opportunity for observing and knowing the matters and things testified to by the witness, and the reasonableness of the testimony.
You should also take into consideration the apparent intelligence of each witness, the possible motives for falsifying, and all other facts and circumstances appearing on the trial which tend either to support or to discredit the testimony, and then give to the testimony of each witness such weight and credit as you believe it is fairly entitled to receive.

[7]Wisconsin J I—Criminal 775 (1985), in part, provides:

ALIBI
There is evidence in this case that at the time of the commission of the offense charged, the defendant was at a place other than that where the crime occurred. [Footnote omitted.]
It is not necessary for the defendant to establish that he was not present at the scene of the crime or that he was at some other place. The burden is upon the State to convince you beyond a reasonable doubt that the defendant committed the offense as charged.

crime and that the State had the burden of proving beyond a reasonable doubt that Waites committed the offense as charged.

In addition to these instructions, which helped to highlight the identification issue, there were also attorney statements and witnesses' testimony during the trial which focused the jury's attention on the identification issue. The circuit court judge encouraged this information when he stated, "[t]hese are things you can argue, and I am sure, gentlemen, you'll argue quite well." The State presented witnesses to support its charge that Waites was the individual who sold cocaine to Officer Schrandt. Officer Schrandt testified that he had seen Waites before the first transaction, and that the first transaction with Waites lasted approximately fifteen minutes, and the second transaction lasted approximately five minutes. His testimony was further corroborated by other evidence which indicated that Waites' future wife occupied the apartment where the transactions occurred, and by Detective Aiello's testimony that he had later seen Waites driving a beige or yellow Mercedes.

Likewise, in his defense, Waites presented witnesses to support his theory that he was not the individual who sold cocaine to Officer Schrandt. Waites' wife testified that she did not meet the defendant until three weeks after the second drug transaction. Waites' brother testified that Waites worked a regular schedule at his store. Waites himself testified that he could not have been the drug seller because he was working at his brother's store when the transactions occurred. In addition to the testimony of these witnesses, the parties had the opportunity to address the possibility of misidentification in their closing arguments, although these arguments are not contained in the trial record.

Based on its statements, the circuit court did not arbitrarily refuse to give the more detailed version of Wis. J I—Criminal 141. The circuit court judge stated that he had previously considered *Williamson* and *Hampton.* He also stated that he did not believe that this identification situation was similar to the normal identification situation involving civilian witnesses.

Based on all these factors, we conclude that the circuit court had a reasonable basis for giving the limited version of Wis. J I—Criminal 141. The jury was fully and fairly informed, and the circuit court did not abuse its discretion.

The next issue concerns the out-of-court and in-court identifications of Waites by Officer Schrandt. The court of appeals did not reach the issue of whether these identifications should have been suppressed, because it held that Waites had waived his right to appeal by not objecting to these identifications at trial. Waites filed a pretrial motion[8] to suppress any identification of him and any anticipated future in-court identifications to be made as a result of Officer Schrandt's *initial* (pre-transaction) viewing of the photograph. Based on this motion, Waites contends that he did not waive his right to appeal the circuit court's decision not to suppress the in-court and out-of-court identifications. We conclude that Waites did not waive his right to appeal either the out-of-court or in-court identifications based on the ini-

[8]This motion states, in part:

Now comes the defendant . . . and respectfully moves this Court for an order suppressing for use as evidence the identification of the defendant made at any photographic array, or other identification of the defendant, and any subsequent in-court or anticipated in-court identification of the defendant with regard to the instant alleged offense.

tial viewing of the photograph. *See* sec. 971.31(2), Stats. However, he did waive his right to appeal the in-court identification based on the *subsequent* (in-court) viewing.

As we stated in *Holmes v. State,* "[t]his court has repeatedly held that one of the rules of evidence is that an objection must be made as soon as the opponent might reasonably be aware of the objectionable nature of the testimony." *Holmes,* 76 Wis. 2d 259, 272, 251 N.W.2d 56 (1977). "Failure to object results in a waiver of any contest to that evidence." *Id.* On direct examination, the assistant district attorney showed Officer Schrandt a photograph which the officer identified as a picture of Waites. Waites did not object to this display and thus did not preserve his right to appeal the in-court identification based on this subsequent showing. *See Frankovis v. State,* 94 Wis. 2d 141, 152, 287 N.W.2d 791 (1980); *Holmes,* 76 Wis. 2d at 271–72; *State v. Hoffman,* 240 Wis. 142, 152, 2 N.W.2d 707 (1942).[9]

We also conclude that the out-of-court and in-court identifications should not be suppressed based upon the initial viewing of the photograph.

[9]While we deem that Waites waived his right to appeal the identification based on the in-court showing, such a showing would not require the in-court identification to be suppressed because Officer Schrandt had an independent recollection of Waites' identity. The showing was done in court, in the presence of the jury, and any concern should address the weight given to the subsequent identification, rather than its admissibility. *See Powell v. State,* 86 Wis. 2d 51, 65–66, 271 N.W.2d 610 (1978); *State v. Cole,* 50 Wis. 2d 449, 454, 184 N.W.2d 75 (1971).

Out-of-court identifications are governed by our decision in *Powell v. State,* 86 Wis. 2d 51, 271 N.W.2d 610 (1978). We stated:

> [t]he test for determining whether an out-of-court photographic identification is admissible or, on review, whether the out-of-court identification was properly admitted has two facets. First, the court must determine whether the identification procedure was impermissibly suggestive. Second, it must decide whether under the totality of the circumstances the out-of-court identification was reliable, despite the suggestiveness of the procedures.

*Powell,* 86 Wis. 2d at 65 (adopting *Neil v. Biggers,* 409 U.S. 188, 199–200 (1972)). The out-of-court identification was not impermissibly suggestive because at the time of the viewing Waites had not committed a crime. There is no claim of entrapment and the photograph was used only to target a potential drug dealer. The danger guarded against by *Powell* was a subsequent in-court identification by eyewitnesses. *Id.* at 64. In this case, the witness was not subsequently identifying a criminal under a suggestive setting; rather, he was merely identifying a potential drug dealer. Because the identification procedure was not impermissibly suggestive, we need not address the second prong: whether the out-of-court identification was reliable.

Likewise, the in-court identification based on the initial viewing is not suppressible. In *Powell,* this court adopted the *Simmons v. United States* rule for in-court identifications: " 'convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the

photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " *Powell,* 86 Wis. 2d 51, 63-64 (quoting *Simmons,* 390 U.S. 377, 384 (1968)). Officer Schrandt had substantial contact with Waites during the course of the drug transactions. Additionally, he had positively identified Waites as the seller in the preliminary hearing two months before the trial. His identification of Waites at trial was based not on his initial look at the photograph, but rather as a result of these subsequent contacts. *See Powell,* 86 Wis. 2d at 65-66; *Kain v. State,* 48 Wis. 2d 212, 219-20, 179 N.W.2d 777 (1970); *Wright v. State,* 46 Wis. 2d 75, 86-87, 175 N.W.2d 646 (1970). In this case, there was not a "substantial likelihood of irreparable misidentification." The in-court identification is not suppressible on the ground that Officer Schrandt saw a picture of Waites prior to the first drug transaction.

The third issue is whether the State used one of its peremptory strikes in a discriminatory fashion to eliminate a black individual during the jury selection process. We hold that Waites has not preserved this issue for appeal, and we will not exercise our discretion to address the issue.

Waites urges this court to remand this issue to the circuit court to determine whether his case was prejudiced by the State's use of a peremptory jury strike to remove a lone black potential juror. Waites did not object to the peremptory strike at the time of voir dire. Waites alleges ineffective assistance of counsel because his attorney did not object to the strike. We do not address Waites' claim of ineffective assistance of counsel as this claim was not preserved by raising it at a post-

conviction hearing before the circuit court.[10]

Our recent decision in *State v. Walker* addressed the issue of the validity of a prosecutor's peremptory challenge. *State v. Walker,* 154 Wis. 2d 158, 169–79, 453 N.W.2d 127 (1990). In *Walker,* as here, the appellant did not make a timely objection. *Walker,* 154 Wis. 2d at 169. In *Walker,* nonetheless, we addressed the peremptory challenge as a matter of choice, based on *State v. Cleveland,* 118 Wis. 2d 615, 632, 348 N.W.2d 512 (1984). We stated:

> [T]he defendant first must show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

---

[10]In addressing an appellant's claim of ineffective assistance of counsel, we have stated "[w]e do not reach such matters and express no view of their merit because the record before us is inadequate in those respects. A claim of inadequate trial counsel is to be raised by a hearing in a trial court, at which trial counsel can testify concerning the reasons behind actions taken." *State v. Mosley,* 102 Wis. 2d 636, 657, 307 N.W.2d 200 (1981) (citing *State v. Simmons,* 57 Wis. 2d 285, 299, 203 N.W.2d 887 (1973)).

*Walker,* 154 Wis. 2d at 172 (quoting *Batson,* 476 U.S. at 96).

Although *Batson* involved a case where a timely objection had been made,[11] we nonetheless exercised our discretion in *Walker* to address this issue. *Id.* at 169–70 (citing *Cleveland,* 118 Wis. 2d at 632). We based this decision on the facts that: (1) Walker's trial counsel was not aware of the recent *Batson* decision; (2) Walker told his counsel that he thought the peremptory challenge was illegal based on a newspaper article on the *Batson* decision he had read; and (3) the circuit court found that Walker's trial counsel erred by failing to bring Walker's concern to the court's attention. *Id.* Waites has alleged no such factors here.

While the prosecutor's strike in *Walker* was objectionable on the face of the record, this case does not suggest a similar conclusion. It is clear from the record that the State had adequate and legitimate reasons for striking the lone black individual[12] from the jury panel. First, the juror admitted knowing the appellant from junior high school when the circuit court judge asked if any person on the jury panel personally knew any of the trial participants. Second, when questioned by the defense counsel whether he had any business contacts with him (defense counsel), he replied, "[n]o, maybe my brother had you once." The prosecutor's reasons for exercising a peremptory strike do not have to rise to the level justifying the exercise of a challenge for cause. *Batson,* 476 U.S. at 97. Because of the juror's possible familiarity with both Waites and his attorney, the State had

---

[11]*Batson,* 476 U.S. at 100.

[12]The defendant argues, and it is assumed for purposes of this discussion, that there was only one black individual on the jury panel, although the State does not concede this point.

adequate, legitimate reasons for striking the lone black potential juror.

Had Waites made a timely objection to the peremptory strike, we would have addressed this issue under the *Batson* test. However, since a timely objection was not made, and since the record does not suggest a *Batson* violation (or a clear ignorance of the *Batson* decision, as was indicated in *Walker),* we decline to conduct a *Batson* analysis or to remand the case to the lower court for such an analysis. Rather, we conclude that Waites did not preserve this issue for appeal and we will not exercise our discretion to reach it.

*By the Court.*—The decision of the court of appeals is affirmed.