In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2631

JOACHIM E. DRESSLER,

Petitioner-Appellant,

v.

GARY R. MCCAUGHTRY,

Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 97 C 431--William E. Callahan, Jr., Magistrate Judge.

Argued October 26, 2000--Decided February 1, 2001

Before EASTERBROOK, KANNE, and EVANS, Circuit Judges.

EVANS, Circuit Judge.  James Madden was last seen alive during the early evening hours of June 26, 1990, in the town of Raymond, Wisconsin. Two days later his legs and torso were found in yellow plastic bags in a farmer's field approximately 3 miles southwest of the site of his disappearance. Madden's skull and arms were discovered 2 weeks later--also enclosed in yellow plastic bags-- approximately 3 miles northeast of the disappearance site. Tests revealed that Madden was the victim of a vicious attack: his genitalia and several other organs were cut from his body; his ankles, wrists, and neck exhibited ligature marks; and fragments, consistent with metal bullets, were embedded in his skull. Madden's wounds demonstrated that the mutilation occurred both before and after his death.

Prior to his disappearance, Madden was soliciting door-to-door for the Citizens for a Better Environment. Madden was last seen by the next-door neighbors of Joachim Dressler and his scheduled route would have made Dressler's home his next stop. Due to these circumstances, the fact that Dressler was home alone the night of Madden's disappearance, and Dressler's admission that he (at least at one time) owned yellow trash bags, the investigation focused on Dressler. Pursuant to a warrant, police searched Dressler's

home, seizing a number of items including firearms, knives, saws, ropes, and bloodstain samples. In addition, the police seized a briefcase which contained videotapes, photographs, and magazines depicting murder and mutilation victims, as well as homosexual pornography. With these discoveries, Dressler became an even hotter suspect, but no arrest was made.

A major break in the investigation came several weeks later on August 8, when Sherwin Beyer, a neighbor of Dressler's, reported to the Racine County sheriff's department that Dressler admitted to him that he was responsible for Madden's death. Specifically, Dressler told Beyer that Madden was soliciting at Dressler's home when they discovered they had a mutual interest in guns. Dressler and Madden went to the back yard to do some practice shooting with a rifle. At some point, Dressler returned to the house to retrieve a handgun and, upon returning, accidentally shot Madden in the back of the head while clearing the gun. Dressler told Beyer he then cut out Madden's brain and put it down the garbage disposal. Shortly after this new information came to light, Dressler was arrested and charged with first degree intentional homicide.

Based on the materials found in Dressler's home, and the nature and extent of Madden's wounds, the State's theory of the offense was "homosexual overkill." Although the murder weapon was never specifically identified, the State introduced into evidence various weapons found at Dressler's home in order to demonstrate that he had the means to inflict the type of injuries Madden suffered. In addition, the videotapes and pictures seized from Dressler's home played a prominent role in the State's case. The trial court admitted, over Dressler's objections, these materials as "other acts" evidence under Wisconsin Statute sec. 904.04(2), holding that they were relevant to the State's theory of homosexual overkill because they were probative of Dressler's homosexuality and fascination with violence.

Dressler's defense centered on the lack of physical evidence linking him to Madden's murder and on demonstrating that others could have been responsible for the crime. The defense did not deny Dressler's statement to Beyer, but rather presented expert testimony on an alcohol-related phenomenon called confabulation. The defense expert testified that alcohol abusers, like Dressler, may invent stories based upon a combination of truth and imagination in order to explain alcohol-induced memory loss. Dressler argued that the story he told Beyer was

confabulated from two separate incidents. First, he pointed to the testimony of Keith Erickson, who told the jury that he came to Dressler's home approximately 2 weeks after the Madden murder to inquire about a car Dressler was selling. After discovering that he and Dressler shared an interest in guns, they shot a rifle in Dressler's back yard, and at some point Dressler went back inside the house and returned with a handgun. When they were finished shooting, Dressler and Erickson engaged in homosexual sex. Second, Dressler flagged for the jury certain questions Racine County Sheriff Robert Rohner asked him during an August 1, 1990, interrogation. Specifically, Sheriff Rohner told Dressler that he believed Dressler shot Madden in the head, broke open his skull, and put his brain down the garbage disposal and into the septic system. Dressler argued that his "confession" to Beyer was a figment of his imagination which combined these two incidents. The jury didn't buy Dressler's confabulation theory and found him guilty of first degree intentional homicide.

On a motion for postconviction relief in the trial court, Dressler objected for the first time, on specific First Amendment grounds, to the introduction of his videotapes and pictures into evidence./1 In opposing Dressler's motion the State did not argue that this objection was untimely or barred for any other procedural reason. The trial court denied Dressler's motion without setting forth its reasoning.

Dressler appealed to the Wisconsin Court of Appeals, asking that his conviction be reversed on numerous grounds, including (1) the trial court's refusal to strike certain prospective jurors for cause, (2) the admission of numerous pieces of evidence, including the videotapes and pictures found in his home, (3) the alleged insufficiency of the evidence, (4) the trial court's refusal to give his proposed jury instructions, and (5) alleged prosecutorial and judicial misconduct. The Court of Appeals addressed and rejected most of these alleged errors on the merits. With respect to Dressler's First Amendment objection to the videotapes and photographs depicting intentional violence and homosexual acts, however, the court held that "[t]his argument was not presented to the trial court and we will not consider it for the first time on appeal." State v. Dressler, 1993 WL 469759, at *6 (Wis. Ct. App. Nov. 17, 1993). Dressler's petition for review before the Wisconsin Supreme Court and his petition for certiorari to the United States Supreme Court were denied.

On April 22, 1997, Dressler petitioned the

United States District Court for the Eastern District of Wisconsin for a writ of habeas corpus, setting forth eight grounds in support of his prayer for relief, which substantially mirror the arguments he presented to the Wisconsin Court of Appeals. Because Dressler's petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214, Magistrate Judge William E. Callahan, Jr. reviewed Dressler's claims that were adjudicated on the merits by the Wisconsin Court of Appeals (i.e., all but the First Amendment claim) under the standard set out in 28 U.S.C. sec. 2254(d). Finding that the state court had not made "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] . . . or that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. sec. 2254(d), the judge declined to issue a writ. The judge went on to reject Dressler's First Amendment argument on both procedural and substantive grounds, applying the de novo standard of review that prevailed prior to the Antiterrorism and Effective Death Penalty Act. See Milone v. Camp, 22 F.3d 693, 698 (7th Cir. 1994). First, in reliance on the Wisconsin Court of Appeals' opinion, the judge held that Dressler procedurally defaulted his First Amendment claim by failing to raise it, "in any form," before the trial court./2 Second, the judge held that the introduction of the videotapes and pictures found in Dressler's home did not implicate his First Amendment rights. He was not tried for possession of these materials, but for murder, and the fact that he was a homosexual with a peculiar interest in death and mutilation supported the State's theory of the case.

Unwilling to accept defeat, Dressler asked Judge Callahan to issue a certificate of appealability pursuant to 28 U.S.C. sec. 2253(c), a necessary prerequisite to this appeal./3 Citing the dissent in United States v. Giese, 597 F.2d 1170 (9th Cir. 1979), the judge found that Dressler's First Amendment argument "is debatable among jurists of reason or, at least, is one that is adequate to deserve encouragement to proceed further." Accordingly, he certified that issue. The judge refused to issue a certificate of appealability as to Dressler's other arguments, and we decline Dressler's invitation to expand the certificate to include them. We therefore address only Dressler's First Amendment argument, which is borderline frivolous at best.

The first step in our analysis is to determine whether Dressler gave the state court "a full and

fair opportunity to review" his claims "through its own judicial processes before asserting federal review." Farrell v. Lane, 939 F.2d 409, 410 (7th Cir. 1991); see also 28 U.S.C. sec. 2254(b). If he either failed to exhaust all available state remedies or raise all claims before the state courts, his petition must be denied without considering its merits. See Thomas v. McCaughtry, 201 F.3d 995, 999 (7th Cir. 2000). A claim that is procedurally defaulted can be rehabilitated and presented in a habeas petition only if the prisoner can demonstrate cause and prejudice for the default, or show that a failure to grant relief would work a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Here, Judge Callahan denied Dressler's habeas petition in part because, according to the Wisconsin Court of Appeals, he never presented his First Amendment objection to the trial court, and therefore he procedurally defaulted the claim.

The State now concedes that the basis of the judge's finding of procedural default--the Wisconsin Court of Appeals' conclusion that Dressler never presented his First Amendment argument to the trial court--was erroneous. The State argues, however, that Dressler's failure to object (on First Amendment grounds) at the time the videotapes and pictures were admitted into evidence effected the procedural default, and that the default was not cured by the belated assertion of the First Amendment objection in the postconviction motion. The State says a timely objection is required, Wis. Stat. sec. 901.03(1)(a), which means one must be made "'as soon as the opponent might reasonably be aware of the objectionable nature of the testimony.'" Simpson v. State, 266 N.W.2d 270, 276 (Wis. 1978) (citing West v. State, 246 N.W.2d 675, 681 (Wis. 1976)); see also State v. Waites, 462 N.W.2d 206, 211 (Wis. 1990) (failure immediately to object to in-court identification of photograph of accused waived issue on appeal); Chitwood v. A.O. Smith Harvestore Prods., Inc., 489 N.W.2d 697, 704 (Wis. Ct. App. 1992) (defendants' failure to move to strike testimony at the close of evidence, when it first became clear that a sufficient foundation would not be laid, waived issue on appeal). Here, Dressler made no specific First Amendment objection to the introduction of the videotapes and pictures when they were introduced into evidence. This violation of the contemporaneous objection rule would, under most circumstances, constitute an independent and adequate state procedural ground for rejecting Dressler's appeal, precluding habeas review./4 Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977).

There are two problems with the State's

argument under the very unique facts of this case, however. First, the Wisconsin Court of Appeals did not rely upon the contemporaneous objection rule in rejecting Dressler's First Amendment claim; rather, it relied upon the erroneous conclusion that Dressler waived the argument by completely failing to present it to the trial court at any time. Thus, the court did not confront the question of whether an objection to the admission of evidence via a postconviction motion, which the trial court denied without explaining whether its reason(s) were procedural or substantive, is sufficient to preserve an issue for appeal in the absence of a corresponding trial objection. The parties have cited no Wisconsin case directly addressing this issue. Second, when faced with the belated assertion of the First Amendment argument in Dressler's postconviction motion, the state prosecutor did not contend that the issue was waived. Thus, Dressler argues that the State has waived any procedural bar to consideration of the merits of his First Amendment argument. Because these are close questions of state procedural law, we are disinclined to decide them. For that reason, we'll consider the merits of Dressler's argument, which, as we said, goes nowhere.

The trial court admitted the videotapes and pictures of intentional violence and homosexual acts pursuant to Wis. Stat. sec. 904.04(2), which authorizes the introduction of "[e]vidence of other crimes, wrongs, or acts . . . when offered . . . as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." According to the trial court, the "act" in this case was Dressler's possession of the materials in question. The videotapes and pictures depicting intentional violence were admitted as evidence of Dressler's motive, intent, and plan to murder Madden, as well as evidence that Madden's death was not an accident. The pictures of homosexual acts, the trial court held, were probative of Dressler's homosexual orientation and therefore supported the State's homosexual overkill theory, i.e., that Madden's death was particularly brutal and violent. We review Dressler's claim that these rulings violated his First Amendment rights, a question of law, de novo. See generally Potts v. City of Lafayette, Ind., 121 F.3d 1106, 1110-11 (7th Cir. 1997).

Dressler mounts a two-pronged argument, starting with the undisputed premise that the videotapes and photographs found in his home are protected by the First Amendment. He then argues that the materials depicting intentional violence were inadmissible evidence of his propensity for violence and that the admission of these

materials permitted the jury to make the impermissible presumption that he acted in conformity with the depictions in the photographs. The State's use of the videotapes and pictures, Dressler contends, will have a chilling effect on the exercise of the public's protected right to read such materials because the ideas depicted will be attributed to those who possess them. With respect to the pictures of homosexual acts, Dressler argues that the State's theory of the case employed backward reasoning. Dressler points out that the homosexual overkill theory did not develop until the pictures were discovered in Dressler's home; Madden's body exhibited no signs of homosexual activity, a circumstance common in cases of homosexual overkill. Thus, the State used the pictures to both create and corroborate its homosexual overkill theory: the murder was homosexual overkill because Dressler is a homosexual. This reasoning, according to Dressler, presumed his guilt.

As the State points out, much of Dressler's argument seeks to rehash the trial court's evidentiary rulings concerning the relevance of the videotapes and pictures. Indeed, Dressler's contention that those materials are inadmissible evidence of his propensity for violence has nothing to do with the First Amendment, but rather directly challenges the trial court's sec. 904.04 analysis. We consider this argument beyond the scope of the certificate of appealability, which limits our review to whether "the introduction into evidence of [the videotapes and pictures], the possession of which were protected by the First Amendment, and which were then used by the State to help prove its theory of 'homosexual overkill' violated the petitioner's First Amendment rights." In addition, evidentiary rulings of state trial courts are normally not subject to habeas review. See United States ex rel. Bibbs v. Twomey, 506 F.2d 1220, 1223 (7th Cir. 1974). In order to claim a right to relief, a petitioner must establish that the incorrect evidentiary ruling was so prejudicial that it violated his due process right to a fundamentally fair trial, creating the likelihood that an innocent person was convicted. See Thompkins v. Cohen, 965 F.2d 330, 333 (7th Cir. 1992).

In any event, we reject Dressler's relevance and propensity arguments. The fact that Dressler maintained a collection of videos and pictures depicting intentional violence is probative of the State's claim that he had an obsession with that subject. A person obsessed with violence is more likely to commit murder, and therefore the videos and photographs are relevant. See Wis. Stat. sec. 904.01 ("'Relevant evidence' means

evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Similarly, a person who possesses photographs of homosexual acts coupled with depictions of extreme violence might be more inclined to commit a crime exhibiting the characteristics of homosexual overkill.

We also believe that the videos and pictures are not inadmissible character or propensity evidence. Although evidence of the general character of a defendant is inadmissible to prove he acted in conformity therewith, sec. 904.04(2) contains an exception to the rule of inadmissibility for evidence offered to prove, among other things, motive, intent, plan, or absence of mistake or accident. Here, the pictures depicting violence were offered to prove Dressler's fascination with death and mutilation, and this trait is undeniably probative of a motive, intent, or plan to commit a vicious murder. In addition, Dressler's possession of those materials rebuts the portion of his statement to Beyer in which he claimed that Madden's killing was accidental. Finally, the pictures of homosexual acts, given the State's homosexual overkill theory, clearly go to motive. Although the videotapes and pictures may also prove bad character or propensity, they were offered for permissible purposes./5

Dressler's First Amendment argument takes a slightly different tack. Citing a litany of cases setting out the well-established protections of the First Amendment, Dressler contends that the trial court violated his rights by permitting the jury to attribute to him the ideas depicted in the videos and photographs. Even if the materials were relevant to his state of mind, and even if they were offered for a purpose permitted by sec. 904.04(2), Dressler maintains that they still must be excluded because their admission "effectively eviscerate[s] the First Amendment protection to look at, read or possess such materials."

The fundamental flaw in Dressler's First Amendment argument, and the major distinguishing factor in the string of broad First Amendment cases he relies upon, is that he was not convicted of possessing, distributing, or looking at the videos and pictures in question. Although they may have helped convict Dressler of murder, he never explains how his right to possess or look at them was affected by their use as evidence against him. And Dressler dramatically overstates the potential chilling effect of the evidentiary use of these materials, as they

formed only one link in the long chain of evidence that proved his guilt. Dressler, 1993 WL 469759, at *12. Innocent citizens, who presumably would not face a mountain of other circumstantial evidence of their guilt, need not fear a murder prosecution based on the mere possession of lawful videotapes and photographs.

The guilty, however, should be wary. As we held in Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc., 991 F.2d 1249, 1260 (7th Cir. 1993), "[w]hile the [F]irst [A]mendment in fact does preserve the right to speak offensively, it does not provide a shield against the logical import of that speech." In that case, a group formed to protest the exercise of fishing rights granted to Native Americans appealed an injunction imposed against its members. The group argued that the district judge erred in considering speech protected by the First Amendment as evidence of racial animus. Id. at 1259. We soundly rejected this argument, holding that merely drawing logical conclusions from the content of protected speech does not interfere with the exercise of the right to speak. Id. at 1260./6 That is exactly what happened here: the jury was permitted to draw an inference about Dressler's state of mind based on the fact that he maintained a collection of photographs depicting fates similar to that suffered by Mr. Madden.

Not only does this inference have nothing to do with the First Amendment, but it is eminently logical as well. If Dressler were accused of causing an explosion, a jury could logically infer his guilt from the fact that a bomb-making manual was found at his home. There is no principled way to distinguish Dressler's videotapes and pictures from the bomber's manual.

Finally, although the issue is beyond the scope of the certificate of appealability, we'll say a word about the allegedly circular reasoning employed by the State with respect to proof of the homosexual overkill theory. According to Dressler, the only evidence of homosexual overkill presented by the State was his status as a homosexual, which was established solely by the pictures discovered in his home. The premises of Dressler's argument are faulty, however. The State's expert, Dr. Jeffrey Jentzen, testified that the wounds suffered by Madden were consistent with homosexual overkill, and Dressler's homosexuality was established not only by the materials seized from his home, but also by the testimony of Keith Erickson, who admitted engaging in homosexual acts with Dressler. More importantly, the homosexual overkill theory was merely the State's explanation of Dressler's

motive, which is not an essential element of the State's case. See Wis. JI-Criminal 175 ("While motive may be shown as a circumstance to aid in establishing the guilt of a defendant, the State is not required to prove motive on the part of a defendant in order to convict.").

   The denial of habeas relief is AFFIRMED.

/1 The Wisconsin Court of Appeals found that Dressler had not presented his First Amendment objection to the trial court. State v. Dressler, 1993 WL 469759, at * 6 (Wis. Ct. App. Nov. 17, 1993). This finding is factually incorrect. Whether Dressler's chosen method of presenting that objection--by postconviction motion rather than by a contemporaneous objection--is sufficient to preserve the issue for appellate review is an entirely different question, however.

/2 The judge cannot be faulted because the postconviction motion in which Dressler raised his First Amendment claim was not included in the record provided to the him. The State now concedes that the First Amendment objection was raised in that motion.

/3 An ambiguity in the language of sec. 2253(c) creates some question as to whether a district judge (or in this case a magistrate judge) has the power to issue a certificate of appealability. See Williams v. United States, 150 F.3d 639, 640 (7th Cir. 1998). We follow our previous holding that either a district judge (or magistrate judge) or a circuit judge may issue the necessary certificate. See id. at 640-41.

/4 State v. Escalona-Naranjo, 517 N.W.2d 157 (Wis. 1994), is a red herring. In that case the Wisconsin Supreme Court overruled a prior decision holding that prisoners may raise on collateral attack any constitutional argument they omitted on direct appeal. See Bergenthal v. State, 242 N.W.2d 199, 203 (Wis. 1976). Now, prisoners must present a "sufficient reason" for their failure to raise such arguments. Escalona-Naranjo, 517 N.W.2d at 164. Here, however, Dressler did raise his First Amendment argument on direct appeal; the State asserts that the argument was waived at the trial court level. So neither Escalona-Naranjo nor Bergenthal applies to this case. In any event, Dressler filed his direct appeal prior to the publication of Escalona-Naranjo, so, if anything, the rule set out in Bergenthal would apply. See Liegakos v. Cooke, 106 F.3d 1381, 1385 (7th Cir. 1997).

/5 Dressler is misguided to the extent he argues the materials were inadmissible because his act of

possessing them was lawful. The statute explicitly permits the admission of evidence of "other crimes, wrongs, or acts," Wis. Stat. sec. 904.04(2) (emphasis added), and the other "acts" need not be criminal. See State v. Peters, 534 N.W.2d 867, 875 (Wis. Ct. App. 1995).

/6 To the extent our decisions in Lac du Flambeau or in this case conflict with the dissent in Giese, 597 F.2d at 1208-09, we reject the reasoning therein.