In the

# United States Court of Appeals
### For the Seventh Circuit

No. 03-1299

MICHAEL A. NEWELL,

*Petitioner-Appellant*,

*v.*

CRAIG HANKS,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. TH 97-127-C-M/F—**Larry J. McKinney,** *Chief Judge.*

SUBMITTED MAY 29, 2003[1]—DECIDED JULY 10, 2003

Before FLAUM, *Chief Judge*, and BAUER and EVANS, *Circuit Judges*.

FLAUM, *Chief Judge.* In 1990 Michael Newell was convicted of dealing cocaine, in violation of IND. CODE § 35-48-4-1, and sentenced to 30 years in prison. Newell timely filed a petition in the federal district court for a writ of habeas corpus under 28 U.S.C. § 2254, *see Newell v. Hanks*, 283 F.3d 827 (7th Cir. 2002), but the district court denied the

---

[1] After examining the briefs and the record, we find that oral argument is unnecessary in this case; accordingly, the appeal is submitted on the briefs and the record. *See* Federal Rules of Appellate Procedure 34(a); Circuit Rule 35(f).

petition following an evidentiary hearing on the merits. Newell obtained a certificate of appealability and now challenges the district court's decision to deny him post-conviction relief. We affirm.

## I. BACKGROUND

A jury convicted Newell of dealing cocaine after hearing evidence at trial that a man named Fred Wells, acting at Newell's behest and driving Newell's truck, delivered a bag of cocaine to undercover police officer Richard McGee and confidential informant Brad Foote. The prosecution's case against Newell consisted almost entirely of the testimony of officer McGee and the transcript and recording of a telephone call between Newell and Foote in which the men planned the sale and delivery of cocaine which led to Newell's arrest. Newell testified in his defense that he neither owned nor possessed the cocaine that Wells sold to Foote. Newell explained that Wells worked for him on his farm and therefore had access to his truck. Newell also testified that he thought Wells was going out to get a pizza that night, not to deliver cocaine. Though Newell called them both to the stand, neither Wells nor Foote testified at Newell's trial; Wells invoked his Fifth Amendment right against self-incrimination (he too had been charged with selling cocaine), and Foote was allegedly nowhere to be found.

In the course of litigating his post-conviction appeals, Newell discovered that the prosecution had deposed Wells shortly after his arrest and gave him a lower bond and partial immunity in exchange for his testimony against Newell. In this 1989 pre-trial deposition, Wells stated that Newell had asked him to sell cocaine to Foote and that he made the delivery in Newell's truck as a favor to Newell. Wells also stated that he actually gave the cocaine to Foote, not McGee, although McGee was present during the exchange. The prosecution never told Newell

about Wells's deposition or its deal with him, either in advance of or in response to Newell's formal requests for discovery. When Newell deposed Wells in 1996 in connection with his post-conviction appeal, Wells stated that the cocaine he had sold to Foote belonged not to Newell, but to someone else. Wells also stated that the prosecution told him he would be treated more favorably with respect to the charges against him if he took the Fifth at Newell's trial.

Newell also discovered during his post-conviction proceedings that the prosecution had made a deal with Foote to secure his cooperation in the case, and that the prosecution knew of Foote's whereabouts during Newell's trial. Newell had attempted numerous times to locate Foote before his trial, but was unsuccessful. When Newell asked the prosecution for information about Foote's location, it not only denied having any such knowledge, but even told the jury that Foote could not be located and his life had been threatened by a known associate of Newell. Years later, at an evidentiary hearing before the district court, Foote admitted that he knew McGee planned to testify falsely at trial about who actually received the cocaine from Wells. Foote also revealed that the prosecution had given him money to leave town before the trial and told him his assistance in Newell's case was no longer needed.

Newell now contends he is entitled to habeas relief on two grounds: first, because the prosecution's suppression of exculpatory evidence, namely its pre-trial deposition of Wells and its alleged deal with him to invoke his Fifth Amendment privilege at Newell's trial in exchange for leniency, violated Newell's due process rights under the Fourteenth Amendment; and second, because the prosecution's deliberate interference with Newell's access to Foote violated his Sixth Amendment right to compulsory process.

## II. Discussion

Newell is entitled to habeas relief only if he can prove that he is in custody "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). Though Newell filed his petition for relief after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), his claims were never adjudicated by a state court; therefore, AEDPA's more deferential standard of review, under which we deny habeas relief unless the state court judgment is either "contrary to or an unreasonable application of clearly established federal law," does not apply to this case. *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1046 (7th Cir. 2001). Instead, we review the district court's findings of fact for clear error and its conclusions of law *de novo. Moffatt v. Gilmore*, 113 F.3d 698, 701 (7th Cir. 1997).

In Newell's case, we find no fault with either the district court's factual findings or its legal conclusions. The district court, in a thorough and well-reasoned opinion, explained that Newell was not entitled to relief because he had not suffered a violation of his constitutional rights resulting from the prosecution's suppression of exculpatory evidence and its interference with Newell's access to a key witness. Acknowledging that some prosecutorial misconduct occurred in Newell's case, the court nevertheless decided it was not materially prejudicial and did not justify issuing a writ of habeas corpus. We agree.

First, we reject Newell's argument that the prosecution violated his due process rights by suppressing the evidence relating to Wells's pre-trial deposition and testimonial arrangements with the prosecution. Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the prosecution has an obligation to disclose exculpatory or impeaching evidence that is material to the case. Importantly, the pros-

ecution's failure to satisfy this obligation amounts to a constitutional violation only if the defendant did not receive a fair trial, *i.e.*, a trial resulting in a verdict worthy of confidence, due to the absence of the suppressed evidence. *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995). In other words, a "true *Brady* violation" consists of (1) evidence favorable to the defendant (2) that is suppressed by the prosecution, (3) resulting in material prejudice to the defendant. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

With respect to Wells's pre-trial deposition, the district court correctly concluded that no *Brady* violation occurred because Wells's testimony was not favorable to Newell. Wells stated in his 1989 deposition that as a favor to Newell he drove Newell's truck to deliver Newell's cocaine to a man Newell had just spoken to on the phone, Brad Foote. Though Newell tries to rely on Wells's later testimony that the cocaine belonged to someone other than him, that particular evidence did not surface until Wells's 1996 deposition and was not available to Newell at his trial in 1989. The only part of Wells's 1989 testimony that is favorable to Newell is the fact that Wells actually gave the cocaine to Foote; since McGee testified at trial that he, and not Foote, took delivery of the cocaine from Wells, this evidence could have been used to impeach McGee. However, the rest of Wells's deposition testimony unequivocally implicates Newell in the crime of dealing cocaine, and we fail to see how Newell could have been materially prejudiced by its absence.

Next, Newell alleges that the prosecution committed a *Brady* violation by suppressing the existence of its two testimonial deals with Wells, one to elicit his pre-trial testimony discussed above and one to encourage him to invoke his Fifth Amendment right not to testify at Newell's trial. Following the evidentiary hearing, the district court agreed with Newell that the prosecution had

made one deal with Wells in which he agreed to testify in a deposition against Newell in exchange for a lower bond and partial immunity. But the district court found the evidence of a deal with Wells to encourage him to invoke his Fifth Amendment right at Newell's trial "equivocal" and therefore concluded that the second deal never existed. Since the evidence in the record is ambiguous on this issue, we cannot say that the district court's finding was clearly erroneous. *See United States v. Charles*, 238 F.3d 916, 918 (7th Cir. 2000). Moreover, Wells had every right to invoke his Fifth Amendment privilege at Newell's trial since he faced criminal charges stemming from the same incident; without proof that the prosecution made him do it, there can be no constitutional violation associated with his refusal to testify.

Last, Newell claims that the prosecution's interference with Foote, in denying knowledge of his whereabouts and insinuating to the jury that his absence was due to a threat by Newell, violated his Sixth Amendment right to compulsory process, in particular his right to present witnesses in his defense. But to establish a violation of this right, a defendant must show more than the mere absence of a witness at trial, he also "must at least make some plausible showing of how [the absent witness's] testimony would have been both material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). Though Newell has established that the prosecution, by sending Foote out of state, giving him money to leave, and not disclosing his location when directly asked to do so, interfered with Newell's ability to use Foote as a witness, Newell has not shown how this misconduct prejudiced him at trial.

Had Foote testified at trial, it is difficult to see how his testimony would have been at all favorable to Newell. According to the record as it has been developed, Foote presumably would have testified that he spoke with Newell

on the phone about arranging the purchase of cocaine, that he met Wells to buy the cocaine after this conversation with Newell, and that to his knowledge the cocaine he bought from Wells came from Newell. At best, Foote could have testified that he, and not McGee, received the cocaine from Wells; but as we stated earlier in discussing the suppression of Wells's testimony, the absence of this one piece of impeaching evidence does not render Newell's trial constitutionally infirm. Nor on this record does the absence of Foote as a witness at Newell's trial justify habeas relief.

### III. CONCLUSION

Though Newell has established some prosecutorial misconduct in connection with his case, he has failed to show that the misconduct prejudiced him materially or violated his federal constitutional rights. We therefore affirm the decision of the district court denying his petition for a writ of habeas corpus.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*