# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-2981

JAMES PERRUQUET,

Petitioner-Appellant,

v.

KENNETH R. BRILEY,

Respondent-Appellee.

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 01 C 1406—**Michael M. Mihm**, *Judge*.

———————

ARGUED JANUARY 9, 2004—DECIDED NOVEMBER 17, 2004

———————

Before POSNER, RIPPLE, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*.  Petitioner James Perruquet
stabbed Christopher Hudson to death during a struggle in
1995, and an Illinois jury later found Perruquet guilty of
first-degree murder. Perruquet now seeks a writ of habeas
corpus, asserting in relevant part that the state trial court
deprived him of due process when it refused to admit evidence
and instruct the jury on self-defense. The district court
concluded that Perruquet had not adequately made out a
due process claim and that, even if he had, the claim was
without merit. We conclude that Perruquet procedurally
defaulted the due process claim by not fairly presenting it to
the Illinois courts.

## I.

Perruquet and Hudson both lived in a trailer park near Goodfield, Illinois, a small town in the central part of the state. Hudson had become friends with Perruquet's wife, Tammy Perruquet ("Tammy"), and this was the source of some tension between the Perruquets. On the evening of April 14, 1995, after Tammy returned home from a walk, she and Perruquet began to argue. Perruquet, thinking that Tammy had been out with Hudson, accused her of having an affair with him. The argument continued on and off over the course of the evening, escalating in volume. Hudson, evidently aware of the fighting and concerned that Perruquet might be hurting Tammy, called their trailer repeatedly, leaving voice messages when they did not pick up the phone. When he called for the third time, Perruquet answered and argued with him. Subsequently, Perruquet left the trailer and went to sit in his car. While he was gone, Hudson called again and Tammy spoke with him. During their conversation, Tammy heard something "bang" against the trailer. She hung up the phone and went to investigate the noise. She opened the trailer to find Perruquet standing there. He had heard Tammy speaking to Hudson and was enraged; Perruquet said that he had heard Tammy tell Hudson she loved him. The two began to argue again, violently. Perruquet grabbed Tammy and pushed her down on a couch. Tammy was screaming, and Perruquet was attempting to stifle her screams by placing his hand over her mouth.

Hudson's apparent effort to intervene at this point cost him his life. While Tammy and Perruquet were arguing, Hudson knocked on the door of their trailer. Perruquet opened the door slightly and told Hudson that the matter was none of his business. Perruquet attempted to close the door, but Hudson persisted in attempting to gain entry. Ultimately, Perruquet lunged out the door at Hudson and the two men fell to the ground. Witnesses saw Perruquet, who landed on top of Hudson, making motions with his arm; in fact,

Perruquet was stabbing Hudson. Hudson died as a result of internal bleeding from several wounds to his chest area. Perruquet subsequently returned to his trailer and, according to a number of witnesses, said to Tammy, "Look what you made me do" or words to that effect.

Before police arrived, Perruquet left the scene and spent the night in a motel. He was apprehended the following day. A medical examination of Perruquet conducted on the evening of his apprehension revealed two small puncture wounds on Perruquet's abdomen which required no treatment other than cleansing.

At trial, Perruquet sought to show that he had killed Hudson in self-defense. He testified that Hudson had yelled at him earlier that day that he would "tear [Perruquet's] head off," "kick [his] ass," and (ultimately) "kill [him]". Perruquet also wanted to elicit testimony from two other witnesses who had heard Hudson say that he would kill Perruquet and also to establish that Hudson had a criminal record that included a conviction for domestic battery. The trial court sustained the State's objection and barred this line of testimony; it also declined to instruct the jury on self-defense. The court reasoned that in order for Perruquet to assert self-defense, he would have to admit that he had stabbed Hudson; but Perruquet had not done this. Although Perruquet had acknowledged the physical altercation with Hudson in his trial testimony, he had not admitted that he stabbed Hudson. Perruquet had testified that when he attempted to shut the trailer door on Hudson, a tug of war had ensued. Perruquet said that he felt a "sting" in his side. Thinking that Hudson had stabbed him, he went "flying" out the door at Hudson. They landed hard on the concrete outside the trailer, and Perruquet feared that he might have broken Hudson's neck. Perruquet denied having picked up a knife before fighting with Hudson. He could offer no explanation for how Hudson received the fatal stab wounds.

Indeed, he testified that he did not even realize that Hudson had been stabbed until the owner of the trailer park so informed him later.

The jury convicted Perruquet of first-degree murder, and the trial court ordered him imprisoned for his natural life. Perruquet appealed to the Illinois Appellate Court, which affirmed his conviction. That court sustained the trial court's refusal to admit evidence and instruct Perruquet's jury on self-defense:

> Defendant denied having a knife and stated he did not know how Hudson got stabbed. The only injury he believed Hudson may have suffered was a broken neck. He testified that he first learned of the stabbing during a telephone call he made after he left the scene. Since defendant did not admit stabbing Hudson, he was not entitled to claim that his use of force was justified by Hudson's own acts. Thus, the trial court did not err in refusing to admit evidence of prior threats from Hudson or evidence of Hudson's criminal history, nor did it err in refusing to instruct the jury on self-defense.

*People v. Perruquet*, No. 4-96-0255, 711 N.E.2d 832, Order at 20 (Ill. App. Ct. Jul. 22, 1997) (unpublished). Notably, the court's decision on this issue was based solely on state law; the court did not consider whether the decision to preclude Perruquet from pursuing a theory of self-defense deprived him of due process. *See id.* at 19-20. Perruquet petitioned for leave to appeal to the Illinois Supreme Court, arguing *inter alia* that the trial court had improperly precluded him from asserting self-defense. That court denied his petition. Perruquet later sought post-conviction relief from the trial court on a variety of claims, most of which the court summarily dismissed without a hearing. The court did conduct an evidentiary hearing on Perruquet's claim that his trial counsel had not provided him with effective assistance of counsel in helping him to decide how the jury would be in-

structed on the charges, but the court ultimately ruled against Perruquet on this claim. *People v. Perruquet*, No. 95 CF 44, Order (Cir. Ct. 11th Judicial Cir. Jan. 18, 2000). That was the sole issue that Perruquet appealed to the Illinois Appellate Court (R. 13 Ex. F), which affirmed the denial of post-conviction relief. *People v. Perruquet*, No. 4-00-0159, 779 N.E.2d 530, Order (Ill. App. Ct. Nov. 8, 2000) (unpublished). The Illinois Supreme Court denied him leave to appeal on that same issue.

Perruquet subsequently filed his *pro se* petition for a writ of habeas corpus in the Central District of Illinois. Among other claims, Perruquet asserted that the state trial court had deprived him of his Fourteen Amendment due process right to a fair trial when the court excluded the evidence through which he sought to establish that he had killed Hudson in self-defense and refused to instruct the jury on self-defense. R. 7 at 6a-6d.

The district court concluded that Perruquet's due process claim was either non-cognizable on habeas review or without merit. As the court recognized, a state trial court's decision not to admit evidence and its refusal to give a particular jury instruction generally do not implicate federal constitutional rights. R. 16 at 8 (citing *Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001)); *see Estelle v. McGuire*, 502 U.S. 62, 71-72, 112 S. Ct. 475, 482 (1991) (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6, 103 S. Ct. 843, 853 n.6 (1983)). Due process does entitle a defendant to a fair trial; but only if the state court committed an error so serious as to render it likely that an innocent person was convicted can the error be described as a deprivation of due process. *Anderson v. Sternes*, 243 F.3d 1049, 1053 (7th Cir. 2001); *Howard v. O'Sullivan*, 185 F.3d 721, 723-24 (7th Cir. 1999). Perruquet did broadly assert that the trial court's errors in precluding his claim of self-defense were sufficiently grave as to constitute a due process violation. *See* R. 7 at 6d. But, in the court's view, Perruquet had done little more than

"repackage[ ]" his state law claims as a federal due process claim, R. 16 at 8-9 (citing *Carson v. Director of Iowa Dep't of Correctional Servs.*, 150 F.3d 973, 975 (8th Cir. 1998)), "parrot[ing]" the pertinent criteria without actually undertaking to *show* how the adverse rulings had resulted in a trial that was so fundamentally unfair as to create the likelihood that he was convicted in error, R. 16 at 9; *see Anderson*, 243 F.3d at 1053; *Howard*, 185 F.3d at 723-24. "Given the substantial evidence of his guilt, the Court cannot find that this even comes close to meeting his burden of proving that the exclusion of the self-defense theory may well have caused the conviction of an innocent person." R. 16 at 9. Alternatively, assuming that Perruquet had made out a cognizable due process claim, the court found no basis for granting him relief in view of the deference owed to the state courts' determinations of law and fact under 28 U.S.C. § 2254(d)(1) and (2). R. 16 at 9-10.

## II.

Our review begins with the principal ground on which the district court disposed of Perruquet's due process claim. As the district court recognized, errors of state law in and of themselves are not cognizable on habeas review. *E.g.*, *Estelle v. McGuire*, *supra*, 502 U.S. at 67-68, 112 S. Ct. at 480. The remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene. *Id.* at 67-68, 112 S. Ct. at 480. To say that a petitioner's claim is not cognizable on habeas review is thus another way of saying that his claim "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Perruquet's claim is founded on two separate but related decisions by the Illinois trial court: the exclusion of evidence that Hudson had threatened to kill Perruquet and

that Hudson had a history of violence, and the refusal to instruct the jury on self-defense. Because a state trial court's evidentiary rulings and jury instructions turn on state law, these are matters that are usually beyond the scope of federal habeas review. *McGuire*, 502 U.S. at 71-72, 112 S. Ct. at 481-82; *see also, e.g., Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001). However, a state defendant does have a Fourteenth Amendment due process right to a fundamentally fair trial. *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 2532 (1984); *see also, e.g., Anderson v. Sternes, supra*, 243 F.3d at 1053; *Dressler*, 238 F.3d at 914. Perruquet asserts that the trial court's rulings deprived him of this right.[1] Nonetheless, the State contended, and the district court agreed, that Perruquet's habeas petition did not, beyond citing his Fourteenth Amendment right to due process, establish how the trial court's rulings were so grave as to have deprived him of that right. For that reason, the court did not reach the merits of this

---

[1] Perruquet's petition also asserted that these rulings deprived him of a constitutional right to have the jury instructed on a defense (of self-defense) that was supported by the evidence, citing the Fifth and Sixth Amendments in addition to the Fourteenth. R. 7 at 6d. At one time, our cases did recognize a defendant's right, grounded in the Fifth and Sixth Amendments, to a jury instruction "on any defense which provides a legal defense to the charge against him and which has some foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." *Whipple v. Duckworth*, 957 F.2d 418, 423 (7th Cir. 1992) (internal quotation marks and citations omitted); *see also Everette v. Roth*, 37 F.3d 257, 261 (7th Cir. 1994). However, our opinion in *Eaglin v. Welborn*, 57 F.3d 496, 500-02 (7th Cir. 1995) (en banc), overruled *Whipple* on this point. The right to have a jury instructed on self-defense, if it is a right secured by the constitution, is one inherent in the broader right to a fundamentally fair trial guaranteed by the due process clause of the Fourteenth Amendment. *See id.* at 501; *see also Trombetta*, 467 U.S. at 485, 104 S. Ct. 2532.

claim; it held simply that Perruquet had not said enough in support of that claim to bring the claim within the limited power of a federal habeas court.

However, we believe that Perruquet's petition draws enough of a connection between his right to due process and the trial court's (alleged) evidentiary and instructional errors to render his claim cognizable on habeas review. The petition, along with the supporting memorandum that Perruquet filed, does more than merely cite his constitutional right to a fair trial. Perruquet has articulated the theory of self-defense that he wished to pursue; he has described the evidence (both excluded and admitted) that supported that theory; and he has argued that preventing him from pursuing the theory of self-defense likely resulted in the conviction of an innocent person. R. 6a-6d; R. 15 at 8-9. Whatever gaps there may be in his petition and supporting memorandum, the basic rationale of Perruquet's due process argument is readily discernible. As Perruquet was without counsel in the district court, his habeas petition is entitled to a liberal construction, *e.g.*, *Jackson v. Duckworth*, 112 F.3d 878, 881 (7th Cir. 1997) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 595-96 (1972)), and given such a construction, his petition contains enough detail to describe a claim that is within the power of a federal court to address.

By saying that Perruquet's claim is cognizable, we are not saying that it is necessarily meritorious. In that regard, one must draw a distinction between *claims* that are cognizable in habeas proceedings and *errors* that are cognizable. Perruquet's claim is that his Fourteenth Amendment right to due process has been violated. That claim, if borne out by the facts, would be one as to which a federal court could grant him relief. Whether the errors that the trial court allegedly committed (if they were errors at all) indeed were of constitutional magnitude or were merely state-law errors could only be assessed based on a closer inspection

of the underlying facts. Neither the State's answer nor the district court's opinion undertook such an examination. Ultimately, on closer inspection, the facts might reveal that even if the trial court did err as Perruquet alleges, the errors were not so grave as to have deprived him of due process—that they were, ultimately, errors of state law, and so beyond the power of a federal habeas court to address. But here the parties and the court proceeded no further than the face of Perruquet's petition, and that petition, as we have explained, adequately sketches out a claim that Perruquet was deprived of due process. As such, it presents a cognizable claim. *See, e.g., Buggs v. United States*, 153 F.3d 439, 444-45 (7th Cir. 1998) (finding that petitioner seeking relief under 28 U.S.C. § 2255 had sufficiently made out a due process claim cognizable on collateral review, but going on to conclude that he had failed "to make a substantial showing that he was denied a constitutional right," as required for certificate of appealability under 28 U.S.C. § 2253(c)(2)); *Blake v. United States*, 841 F.2d 203 (7th Cir. 1988) (finding that pro se petitioner under 28 U.S.C. § 2255 had sufficiently made out due process claim cognizable on collateral review, but going on to find that no violation of due process had occurred).

As an alternate basis for disposing of the claim, the district court indicated that Perruquet had not shown that the state-court rulings on this claim were either contrary to, or reflected an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. R. 16 at 9; *see* 28 U.S.C. § 2254(d). But the state courts never passed judgment on Perruquet's due process claim; their rulings on the subject of the self-defense theory were based solely on state law and contain no hint of constitutional analysis. Thus, Perruquet cannot be faulted for the failure to articulate why the state courts' adjudication of his claim was irreconcilable with federal law—there was no state-court ruling for him to critique.

The conspicuous absence of any state-court decision on Perruquet's due process claim does beg an explanation, however, and that explanation in turn will dictate how we shall proceed to address the claim. The State contends that the lack of a state-court ruling is explained by Perruquet's failure to invoke the United States constitution while he was pursuing his state-court remedies. That failure, as the State sees it, bars us from reaching the merits of Perruquet's claim. Perruquet, on the other hand, contends that he did present the due process claim to the state courts and that they simply failed to address that claim. As a result, Perruquet reasons, this court may not only reach the merits of that claim, but should do so without the usual degree of deference that we would accord to the state court's rationale pursuant to section 2254(d)(1). *See Newell v. Hanks*, 335 F.3d 629, 631-32 (7th Cir. 2003); *Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir.), *cert. denied*, 539 U.S. 960, 123 S. Ct. 2653 (2003).

Before seeking a writ of habeas corpus in federal court, a petitioner must first exhaust the remedies available to him in state court. 28 U.S.C. § 2254(b)(1)(A). Exhaustion serves an interest in federal-state comity by giving state courts the first opportunity to address and correct potential violations of a prisoner's federal rights. *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45, 119 S. Ct. 1728, 1732 (1999). For that opportunity to be meaningful, the petitioner must fairly present to each appropriate state court his constitutional claims before seeking relief in federal court. *Baldwin v. Reese*, 124 S. Ct. 1347, 1349 (2004); *Boerckel*, 526 U.S. at 845, 119 S. Ct. at 1732-33; *Picard*, 404 U.S. at 275, 92 S. Ct. at 512; *Momient-El v. DeTella*, 118 F.3d 535, 538 (7th Cir. 1997).

> If the exhaustion doctrine is to prevent unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution, it is not sufficient merely that the federal habeas applicant has been

through the state courts. The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts. Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.

*Picard*, 404 U.S. at 275-76, 92 S. Ct. at 512 (internal quotation marks and citations omitted). Presenting the "same claim" in state court that he later seeks to make in federal court means that the petitioner must alert the state courts that he is relying on a provision of the federal constitution for relief. *Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S. Ct. 887, 888 (1995) (per curiam); *see also Reese*, 124 S. Ct. at 1349.

Where state remedies remain available to a habeas petitioner who has not fairly presented his constitutional claim to the state courts, the exhaustion doctrine precludes a federal court from granting him relief on that claim: although a federal court now has the option of denying the claim on its merits, 28 U.S.C. § 2254(b)(2), it must otherwise dismiss his habeas petition without prejudice so that the petitioner may return to state court in order to litigate the claim. *Castille v. Peoples*, 489 U.S. 346, 349, 109 S. Ct. 1056, 1059 (1989); *Rose v. Lundy*, 455 U.S. 509, 522, 102 S. Ct. 1198, 1205 (1982); *see* 28 U.S.C. § 2254(b)(1)(A). However, where, as in this case, the petitioner has already pursued his state-court remedies and there is no longer any state corrective process available to him, it is not the exhaustion doctrine that stands in the path to habeas relief , *see* 28 U.S.C. § 2254(b)(1)(B)(i), but rather the separate but related doctrine of procedural default. The procedural default doctrine, which like the exhaustion doctrine is grounded in principles of comity, federalism, and judicial efficiency, *see Dretke v.*

*Haley*, 124 S. Ct. 1847, 1851-52 (2004), normally will preclude a federal court from reaching the merits of a habeas claim when either (1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 735 & n.1, 111 S. Ct. 2546, 2557 & n.1 (1991); *Harris v. Reed*, 489 U.S. 255, 263 & n.9, 109 S. Ct. 1038, 1043 & n.9 (1989); *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004). Thus, when the habeas petitioner has failed to fairly present to the state courts the claim on which he seeks relief in federal court and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted that claim. *Boerckel*, 526 U.S. at 853-54, 119 S. Ct. at 1736; *see also, e.g.*, *Momient-El*, 118 F.3d at 541.

The procedural default doctrine does not impose an absolute bar to federal relief, however. "[I]t provides only a strong prudential reason, grounded in 'considerations of comity and concerns for the orderly administration of justice,' not to pass upon a defaulted constitutional claim presented for federal habeas review." *Haley*, 124 S. Ct. at 1852 (quoting *Francis v. Henderson*, 425 U.S. 536, 539, 96 S. Ct. 1708, 1710 (1976)). The doctrine is therefore subject to equitable exceptions. *Id.* A procedural default will bar a federal court from granting relief on a habeas claim *unless* the petitioner demonstrates cause for the default and prejudice resulting therefrom, *Wainwright v. Sykes*, 433 U.S. 72, 87-88, 97 S. Ct. 2497, 2506-07 (1977), or, alternatively, he convinces the court that a miscarriage of justice would result if his claim were not entertained on the merits, *Murray v. Carrier*, 477 U.S. 478, 495-96, 106 S. Ct. 2639, 2649 (1986). *See also Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000); *Boerckel*, 526 U.S. at 854,

119 S. Ct. at 1737; *Coleman*, 501 U.S. at 750, 111 S. Ct. at 2565. To establish cause for his default, a petitioner ordinarily must show that some external impediment blocked him from asserting his federal claim in state court. *Carrier*, 477 U.S. at 488, 492, 106 S. Ct. at 2645, 2648. To establish prejudice, he "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596 (1982) (emphasis in original). If the petitioner cannot show cause and prejudice but instead seeks to overcome his procedural default by establishing the prospect of a miscarriage of justice, then he must demonstrate that he is actually innocent of the crime for which he was convicted—that is, he must convince the court that no reasonable juror would have found him guilty but for the error(s) allegedly committed by the state court. *Schlup v. Delo*, 513 U.S. 298, 327-29, 115 S. Ct. 851, 867-68 (1995).

The State, as we have noted, contends that Perruquet did not fairly present his due process claim to the Illinois courts and, consequently, committed a procedural default that bars federal review of that claim. Perruquet has two responses. He asserts first that the State waived this purported default because it never argued below that he had failed to fairly present his due process claim to the state courts, *see* R. 12 at 5-7; by contrast, the State did contend that federal review was foreclosed as to two of his other claims due to procedural defaults, *see* R. 12 at 8-10. Alternatively, Perruquet contends that he did alert the state courts that he was relying on the federal constitution and thus he did fairly present the due process claim to the state courts.

A petitioner's procedural default does not deprive the federal court of jurisdiction over his habeas petition; rather,

it is an affirmative defense that the State is obligated to raise and preserve, and consequently one that it can waive. *Trest v. Cain*, 522 U.S. 87, 89, 118 S. Ct. 478, 480 (1997). As with any other right or defense, the State will waive procedural default by intentionally relinquishing its right to assert that defense. *See, e.g.*, *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) ("waiver is the intentional relinquishment of a known right") (citing *United States v. Rand Motors*, 305 F.3d 770, 773 (7th Cir. 2002)), *cert. denied*, 124 S. Ct. 1049 (2004). Such a waiver may be explicit or implicit. *See, e.g.*, *Buggs v. United States*, *supra*, 153 F.3d at 444 (quoting *Kurzawa v. Jordan*, 146 F.3d 435, 439-40 (7th Cir. 1998)). Nothing in the record before us suggests that the State explicitly waived a procedural default defense in this case, *cf. Henderson v. Thieret*, 859 F.2d 492, 497-98 (7th Cir. 1988) (indicating that State explicitly waived procedural default by expressly declining to raise it even at the district court's invitation), so the waiver, if any, was implicit. We note that the procedural default at issue here arises from Perruquet's purported failure to fairly present his due process claim to the Illinois courts, an obligation inherent in his duty to properly exhaust his state-court remedies. *Picard*, 404 U.S. at 275-76, 92 S. Ct. at 512; *see also Boerckel*, 526 U.S. at 848, 119 S. Ct. at 1734. And 28 U.S.C. § 2254(b)(3), added to the habeas statute by the Antiterrorism and Effective Death Penalty Act of 1996, provides that "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance on the requirement unless the State, through counsel, expressly waives the requirement." Some courts have construed section 2254(b)(3)'s express-waiver requirement to apply to procedural default defenses arising from the petitioner's failure to properly exhaust his remedies in state court while those remedies remained open to him. *See Nelson v. Schofeld*, 371 F.3d 768, 770 n.4 (11th Cir. 2004), *cert. denied*, 2004 WL 2201374 (U.S. Nov. 1, 2004); *Gonzales v. McCune*, 279 F.3d 922, 924 (10th Cir. 2002) (en banc); *Hale v. Gibson*,

227 F.3d 1298, 1327-28 & n.12 (10th Cir. 2000); *see also Franklin v. Johnson*, 290 F.3d 1223, 1238-39 (9th Cir. 2002) (O'Scannlain, J., concurring in part & concurring in the judgment). Other courts, noting the distinctions between the exhaustion and procedural default doctrines, have concluded that section 2254(b)(3) applies only when the State's defense can accurately be labeled one of exhaustion rather than procedural default, *i.e.*, where the state courts remain open to the petitioner and he can still exhaust his state remedies. *Id.* at 1230-32 (majority opinion); *see also Jackson v. Johnson*, 194 F.3d 641, 652 n.35 (5th Cir. 1999); *but see Franklin*, 290 F.3d at 1238-39 (concurrence) (pointing out that the procedural default asserted in *Jackson* was not based on the failure to exhaust). We need not consider which of these two conflicting lines of authority is correct, for as we conclude below, assuming that the State can implicitly waive a procedural default defense based on the petitioner's failure to properly exhaust his state-court remedies, it has not done so here.

The State implicitly waives a defense when its response to the petitioner's claim is inconsistent with an intent to preserve that defense. *Cf. United States v. Johnson*, 223 F.3d 665, 669 (7th Cir. 2000) (defendant implicitly waived his right of self-representation when "[t]he only plausible inference from the defendant's conduct" was that he had deliberately relinquished that right). Thus, for example, where the State has responded to one habeas claim on its merits while asserting that another is procedurally barred, it has implicitly waived any contention that the first claim is also procedurally defaulted. *See Henderson v. Thieret*, 859 F.2d at 497-98; *see also, e.g., Buggs*, 153 F.3d at 444; *Bonner v. DeRobertis*, 798 F.2d 1062, 1066 & n.3 (7th Cir. 1986).

In the district court, the State asserted a procedural default defense as to some of Perruquet's claims but not as to his due process claim. *See* R. 12 at 7-10. Its failure to in-

voke procedural default as to the latter claim thus lends some support to Perruquet's argument that the State has waived the defense. *See Henderson*, 859 F.2d at 497-98. On the other hand, the State did not address the underlying merits of Perruquet's due process claim. It did not, in other words, undertake to defend the propriety of the trial court's decision to exclude evidence and a jury instruction on self-defense or to counter Perruquet's contention that these rulings deprived him of his right to due process. Instead, the State argued only that Perruquet had failed to state a claim that was cognizable on federal habeas review because he had not articulated why the trial court's rulings resulted in a fundamentally unfair trial. R. 12 at 6-7. The district court agreed with that contention; but for the reasons we have already set forth, we believe that the district court erred in disposing of Perruquet's claim on this basis. But whether the State's cognizability argument was right or wrong, what matters vis-à-vis the waiver question is that the State did not engage Perruquet on the merits of his due process claim. The State could have argued in the alternative that Perruquet had procedurally defaulted the claim by failing to present it to the Illinois courts.[2] But under the circum

---

[2] The State suggests that it was deprived of the opportunity to raise the question of fair presentment in the district court, because in his habeas petition Perruquet failed to articulate why the state-court rulings on the subject of self-defense amounted to a deprivation of his federal constitutional rights. Thus, as we have previously discussed, the State argued to the district court, and that court agreed, that Perruquet had not set forth a cognizable constitutional claim. R. 12 at 5-7; R. 16 at 8-9. Even assuming that Perruquet did not sufficiently substantiate his due process claim, however, the face of Perruquet's habeas petition nonetheless makes clear that he was invoking the federal constitution's guarantee of due process. R. 7 at 6d. Consequently, the State was on notice that Perruquet was at least attempting to make out a

(continued...)

stances, we do not think its failure to do so signals an intent to forgo such a defense. Logically, the argument that the State did make came first in order of priority (the petition failed to state a cognizable federal claim); the procedural default argument springs from a contrary premise (the petition did state a cognizable federal claim, but one that was never presented to the state courts) that the district court never embraced.

What we have, then, is a simple failure of the State to assert a procedural default when it answered Perruquet's habeas petition. The State's silence on the subject of procedural default is normally not enough, standing alone, to demonstrate the intent to relinquish the defense that is the essence of true waiver. *See, e.g.*, *Kurzawa*, 146 F.3d at 440; *see also United States v. Rhodes*, 330 F.3d 949, 952-53 (7th Cir. 2003); *United States v. Lemmons*, 282 F.3d 920, 923 n.3 (7th Cir. 2002).

Granted, there are any number of decisions from this court indicating that the State waives the procedural default defense by not asserting it in the district court. *E.g.*, *Cossel v. Miller*, 229 F.3d 649, 653 (7th Cir. 2000); *Hernandez v. Cowan*, 200 F.3d 995, 997 (7th Cir. 2000); *see also Karazanos v. Madison Two Assocs.*, 147 F.3d 624, 629 (7th Cir. 1998) ("Arguments not made in the district court are waived on appeal, as we have said on countless occasions."). To the extent that these opinions rely solely on the failure to raise the defense in the district court, without evidence of the State's intent to relinquish the defense, they are best understood as saying that the State has forfeited the de-

---

[2] (...continued)
federal claim with respect to the self-defense theory. Indeed, the State's answer acknowledges as much. R. 12 at 6. Under those circumstances, the State was not deprived of the opportunity to raise the issue of fair presentment.

fense. *See United States v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 1777 (1993) (distinguishing waiver from forfeiture); *United States v. Richardson*, 238 F.3d 837, 841 (7th Cir. 2001) (noting that "forfeiture" is term better used to describe inadvertent, rather than intentional, failure to raise issue, so as to distinguish it from "classic or 'real' waiver"); *Johnson*, 223 F.3d at 668 (same). Forfeiture occurs when a party fails to timely assert a defense or an argument. *E.g.*, *United States v. Jacques*, 345 F.3d 960, 962 (7th Cir. 2003).

At the same time, there are precedents from this circuit and others that recognize a federal appellate court's discretion to address a procedural default even when the State has raised it for the first time on appeal. *See Brewer v. Aiken*, 935 F.2d 850, 860 (7th Cir. 1991) (citing, *inter alia*, *Burgin v. Broglin*, 900 F.2d 990, 997 (7th Cir. 1990)); *see also, e.g.*, *Szuchon v. Lehman*, 273 F.3d 299, 321 & n.13 (3d Cir. 2001) (reaching procedural default even after concluding that "the Commonwealth may well have waived its procedural-default defense"); *King v. Kemna*, 266 F.3d 816, 821-22 (8th Cir. 2001) (en banc). Indeed, although the Supreme Court has not yet reached the question, *see Trest v. Cain*, *supra*, 522 U.S. at 90, 118 S. Ct. at 480, there is a related line of cases at the circuit level acknowledging that federal courts generally have the discretion to raise the subject of procedural default *sua sponte*. *Kurzawa*, 146 F.3d at 440 ("If the State does not explicitly or implicitly forego the [procedural default] defense, we may make *sua sponte* inquiry into whether a procedural default is manifest 'and decide whether comity and judicial efficiency make it appropriate to consider the merits' of the petitioner's arguments") (quoting *Galowski v. Murphy*, 891 F.2d 629, 634-35 n.11 (7th Cir. 1989)); *Henderson v. Thieret*, *supra*, 859 F.2d at 498; *see also King*, 266 F.3d at 822, and *Boyd v. Thompson*, 147 F.3d 1124, 1128 (9th Cir. 1998) (collecting cases); *cf. Granberry v. Greer*, 481 U.S. 129, 133-34, 107 S. Ct. 1671, 1674-75 (1987) (appellate court, in exercise of discretion,

may *sua sponte* raise petitioner's failure to exhaust state-court remedies). These cases reason that in view of the interests in comity, federalism, and judicial efficiency implicated by a habeas petitioner's failure to properly present his constitutional claim to the state courts before seeking habeas relief in federal court, it can be appropriate for a federal court to overlook the State's failure to timely assert (or to assert at all) the petitioner's procedural default. *See Kurzawa*, 146 F.3d at 440; *Boyd*, 147 F.3d at 1127-28; *see also Granberry*, 481 U.S. at 133-34, 107 S. Ct. at 1674-75.

Under the circumstances presented in this case, we believe it is appropriate to reach the State's procedural default defense notwithstanding its failure to assert that defense in the district court. First, as our ensuing discussion will reveal, the procedural default in this case is clear: Perruquet failed to raise his due process claim at any level of state-court review. Second, because no Illinois court was ever given the opportunity to pass on the merits of Perruquet's constitutional claim, comity and federalism principles weigh strongly against permitting Perruquet to assert the claim in federal court. Third, if we were to reach the merits of Perruquet's constitutional claim, we necessarily would have to do so *de novo*, as there is no state-court decision we can look to for an evaluation of this claim. *See Newell v. Hanks*, *supra*, 335 F.3d at 631-32; *Aleman v. Sternes*, *supra*, 320 F.3d at 690. This would be inconsistent with the high level of deference to state-court decisions that Congress mandated when it passed the Antiterrorism and Effective Death Penalty Act of 1996. *See*, *e.g.*, *McFowler v. Jaimet*, 349 F.3d 436, 455 (7th Cir. 2003). It would also amount to a windfall for Perruquet, who would win plenary review of a claim that he never presented to the Illinois courts, whereas habeas petitioners who properly present their claims to state courts first are entitled only to the extremely narrow review mandated by section 2254(d). Fourth and finally, Perruquet's claim would call upon us to reconcile a

State's prerogative to define the elements of crimes and affirmative defenses, *see Eaglin v. Welborn*, 57 F.3d 496, 501 (7th Cir. 1995) (en banc), with a defendant's right to present a complete defense to the charges against him, *see California v. Trombetta, supra*, 467 U.S. at 485, 104 S. Ct. at 2532; *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 1045 (1973); *see also Montana v. Egelhoff*, 518 U.S. 37, 56, 116 S. Ct. 2013, 2023 (1996) (plurality) (acknowledging possibility that right to have jury consider evidence of self-defense may be fundamental right). *See, e.g., Taylor v. Withrow*, 288 F.3d 846, 853-54 (6th Cir. 2002) (analyzing whether Michigan law vis-à-vis self-defense deprived defendant of due process). For example, Perruquet represents that he cannot, in good faith, admit that he stabbed Hudson because he does not recall doing so. Perruquet does not believe that Illinois law insists on such an admission, so long as he acknowledges the sequence of events (*i.e.*, the struggle with Hudson) that culminated in Hudson's death and he admits using force that he believed was necessary to defend himself from Hudson (*i.e.*, he lunged at Hudson and knocked him to the ground upon feeling a sting in his side, thinking that Hudson had stabbed him). Perruquet Reply Br. at 9 (citing *People v. Robinson*, 516 N.E.2d 1292, 1304-05 (Ill. App. Ct. 1987) (evidence of self-defense admissible as to struggle that ended with fatal gunshot, even if defendant claims that gunshot itself was an accident)). If Illinois law did demand such an admission, then by Perruquet's account it would place him in an impossible situation, requiring him either to commit perjury by confessing an act that he does not recall or to forfeit the claim of self-defense altogether. *Id.* at 10 n.4. Wherever the asserted defect lies (be it in the state court's interpretation of Illinois law or in Illinois law itself), Perruquet contends that it deprived him of a meaningful opportunity to defend himself against the charge. The Illinois courts, which have a much greater familiarity than we do with Illinois law and the requirements it imposes on claims of self-defense, are

better situated in the first instance to identify those re-
quirements and to consider whether they actually inter-
fered with Perruquet's right to a fundamentally fair trial;
and conversely we would be at a disadvantage in making
that assessment without the guidance that the state courts
could offer us as to the parameters of Illinois law.

We wish to emphasize that we are electing to address the
State's procedural default defense, notwithstanding its fail-
ure to assert the defense below, as a matter of discretion,
and that we are by no means suggesting that this court or
the district courts should routinely overlook the forfeiture
of a procedural default defense. *See Trest v. Cain, supra*,
522 U.S. at 89, 118 U.S. at 480 ("A court of appeals is not
'required' to raise the issue of procedural default *sua sponte*.").
We are satisfied that the circumstances here support our
decision. But the decision whether to assert an affirmative
defense like procedural default lies with the Illinois Attorney
General in the first instance, *Bonner v. DeRobertis, supra*,
798 F.2d at 1066 & n.3, and in the ordinary course of
events, her failure to raise the defense in a timely manner
will result in a forfeiture. That said, we proceed to consider
whether Perruquet fairly presented his due process claim
to the Illinois courts.

A petitioner fairly presents his federal claim to the state
courts when he articulates both the operative facts and the
controlling legal principles on which his claim is based.
*E.g., Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004).
He need not "cit[e] 'book and verse on the federal constitu-
tion.' " *Picard v. Connor, supra*, 404 U.S. at 278, 92 S. Ct.
at 513 (quoting *Daugharty v. Gladden*, 257 F.2d 750, 758
(9th Cir. 1958)). But he must, in some manner, alert the
state courts to the federal underpinnings of his claim.
*Duncan v. Henry, supra*, 513 U.S. at 365-66, 115 S. Ct. at
888. In deciding whether the state courts were so alerted,
we look to a number of factors, including: " '(1) whether the
petitioner relied on federal cases that engage in constitu-

tional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.'" *Sweeney*, 361 F.3d at 332 (quoting *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001)). "'[T]he presence of any one of these factors . . . does not automatically avoid a waiver; the court must consider the facts of each case.'" *Momient-El v. DeTella*, *supra*, 118 F.3d at 539 (quoting *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992)).

A review of Perruquet's brief on direct appeal, the Illinois Appellate Court's order, and Perruquet's petition for leave to appeal to the Illinois Supreme Court convinces us that he did not fairly present his due process claim to the state courts. Neither his appellate brief nor his petition for leave to appeal on the subject of self-defense contains any mention of due process, the Fourteenth Amendment, or even the United States constitution generally. *See* R. 13 Ex. A at 31-36; *id.* Ex. C at 15-19. Perruquet cited only state cases to the Illinois courts. None of those cases look to the federal constitution or employ a due process analysis; all instead apply Illinois standards for the admission of evidence and for instructing the jury on self-defense.[3] The facts as

---

[3] Two of the state cases that Perruquet cited do mention a defendant's right to a "fair trial," *see People v. Crane*, 585 N.E.2d 99, 102 (Ill. 1991); *People v. Robinson*, 516 N.E.2d 1292, 1295, 1298 (Ill. App. Ct. 1987), but those cases neither mention due process nor rely on federal cases for their holdings, and so they would not have alerted the Illinois courts that Perruquet was making a claim based, at least in part, on due process.

*People v. Everette*, 565 N.E.2d 1295 (Ill. 1990), on which Perruquet also relied, cites both a Supreme Court case and a
(continued...)

Perruquet presented them presented ordinary questions of state law; these facts certainly were not within the mainstream of constitutional litigation. *See Sullivan v. Fairman*, 731 F.2d 450, 453-55 (7th Cir. 1984).

We reject Perruquet's suggestion that the subsequent history of one of the state cases that he cited in support of his claim was alone sufficient to alert the Illinois courts that he was presenting them with a federal due process claim. *People v. Everette*, 565 N.E.2d 1295 (Ill. 1990), was among the cases on which Perruquet relied in state court. That case itself employs no due process analysis. However, the appellant in *Everette* subsequently sought (and won) a writ of habeas corpus from the federal district court. Our

---

[3] (...continued)

federal district court case for the general proposition that a defendant is entitled to a jury instruction on self-defense so long as there is some evidence that would permit a reasonable jury to find that he acted in self-defense. *See id.* at 1298-99, citing *Mathews v. United States*, 485 U.S. 58, 64, 108 S. Ct. 883, 887 (1988), and *United States ex rel. Bacon v. DeRobertis*, 551 F. Supp. 269, 273 (N.D. Ill. 1982), *aff'd*, 728 F.2d 874 (7th Cir. 1984) (per curiam). However, the analysis of *Mathews* was not grounded in constitutional law; and although both the district court and this court did engage in a constitutional analysis in *Bacon*, *Everette* did not cite *Bacon* for a constitutional point nor did the *Everette* court engage in any constitutional analysis. Another of Perruquet's authorities, *People v. Buchanan*, 414 N.E.2d 262, 264 (Ill. App. Ct. 1980), cites a federal case, *United States v. Burks*, 470 F.2d 432, 434-35 (D.C. Cir. 1972), but *Burks* did not reflect any constitutional analysis. *Robinson*, *supra*, 516 N.E.2d at 1300, also cites a federal district court case, *Landry v. Daley*, 280 F. Supp. 938 (N.D. Ill. 1968), *appeal dismissed*, 393 U.S. 220, 89 S. Ct. 455 (1968), *rev'd*, 401 U.S. 77, 91 S. Ct. 758 (1971), but solely for its discussion of the meaning of the terms "force" and "violence". These citations thus would not have placed the Illinois courts on notice that Perruquet was asserting a due process claim either.

opinion on appeal in that case said that "[w]hen there is evidentiary support for a . . . theory of self-defense, failure to instruct on self-defense violates a criminal defendant's Fifth and Sixth Amendment rights." *Everette v. Roth*, 37 F.3d 257, 261 (7th Cir. 1994) (citing *Whipple v. Duckworth*, 957 F.2d 418, 423 (7th Cir. 1992)). Although that particular proposition is no longer good law in this circuit, *see Eaglin v. Welborn, supra*, 57 F.3d at 500-02 (overruling *Whipple*); *supra* n.1, our opinion in *Everette*, which also references a defendant's right to due process, 37 F.3d at 261, signals that state-court rulings affecting a defendant's ability to pursue a theory of self-defense can implicate federal constitutional rights. A check of *People v. Everette*'s subsequent history would, of course, have disclosed our decision in the habeas proceeding, and in Perruquet's view, this is enough to have alerted the state courts to the constitutional foundation of his claim. However, in view of the Supreme Court's recent opinion *Baldwin v. Reese, supra*, 124 S. Ct. 1347, we think it is clear that a state court need not look beyond the appellant's brief and the cases cited there in order to ascertain whether the appellant is making a federal claim. *Reese* held that a state appellate court is not obligated to read the opinion of the lower court that it is reviewing to see whether the defendant might be relying on the federal constitution for relief, but instead may justifiably rely solely on the contents of the defendant's brief. *Id.* at 1350-51. Whatever *People v. Everette*'s history might have disclosed to an inquisitive researcher about the potential for a federal due process claim is thus beside the point. Perruquet did not cite our opinion in *Everette* to the Illinois courts. He relied solely on the Illinois Appellate Court's opinion, and that opinion employed no due process analysis.[4]

---

[4] We note that Perruquet's post-conviction petition did assert that the trial court deprived him of due process by refusing to admit
(continued...)

Perruquet has not supplied us with any compelling rea-
son to reach the merits of his due process claim notwith-
standing his failure to fairly present that claim to the
Illinois courts. He has not identified any circumstance that
might amount to good cause for the procedural default, *see
Carrier*, 477 U.S. at 494-95, 106 S. Ct. at 2648-49 (cause
must be shown in addition to prejudice), and his arguments
as to the prejudice resulting from the default and the pros-
pect of a miscarriage of justice are confined to just a few
sentences. Perruquet Reply Br. at 5-6. It suffices for us to
note that there can be little doubt that Perruquet killed
Hudson—the physical altercation between the two men was
observed by multiple witnesses, and at this point Perruquet
himself does not deny having killed him. (Perruquet's
counsel conceded this point at oral argument.) At the same
time, the evidence that Perruquet killed Hudson in self-de-
fense was not particularly strong: Perruquet had been
fighting with his wife when Hudson arrived at their trailer
and attempted to gain entrance; Perruquet lunged at Hudson
while the two men were engaged in a tug of war at the
trailer doorway; Perruquet appeared to be in a rage; after
killing Hudson, Perruquet was heard to say to his wife,
"Look what you made me do"; although Perruquet testified
that he lunged at Hudson after he felt a sting in his side,
he did not tell witnesses in the immediate aftermath of the
struggle that he had been hurt, he did not exhibit any signs

---

[4] (...continued)
evidence and instruct the jury on self-defense. R. 13 Ex. E at 2
¶ 7(c). However, assuming that Perruquet remained free to assert
the constitutional ramifications of the trial court's ruling in post-
conviction proceedings after having failed to do so on direct
review, he did not pursue this claim on appeal from the post-
conviction court's ruling. *See* R. 13 Exs. F, H. Consequently, he
cannot be said to have fairly presented the constitutional claim on
post-conviction review. *See Spreitzer v. Schomig*, 219 F.3d 639,
645 (7th Cir. 2000); *Momient-El*, 118 F.3d at 540-41.

of injury to the desk clerk at the motel where he spent the evening following the fight, the two puncture wounds that medical personnel observed on his abdomen the following day did not require so much as a Band-Aid, and Perruquet told the emergency room doctor who examined him that he did not know how he got the wounds; and, finally, according to both a deputy and an investigator for the sheriff's department, Perruquet later explained that the reason he went after Hudson was that he wanted to be left alone, Hudson would not listen, and he had "just had enough." Perruquet himself testified that he had not taken Hudson's threats seriously. The likelihood that Perruquet might have been acquitted had the evidence regarding Hudson's threats been admitted and the jury had been instructed on self-defense strikes us as slim. The procedural default therefore bars us from reaching the merits of his claim. *E.g.*, *Wilson v. Briley*, *supra*, 243 F.3d at 329.

## III.

Because Perruquet did not fairly present his due process claim to the Illinois courts and thereby procedurally defaulted that claim, and because Perruquet has not established grounds for overlooking the default, the federal courts may not reach the merits of this claim. We therefore AFFIRM the district court's decision to deny Perruquet relief on this claim. We thank Perruquet's appointed appellate attorneys for their vigorous advocacy on his behalf.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*